THE STATE v. SILVA, *Appellant.*

Division Two, November 19, 1895.

1. **Criminal Practice:** CALLING IN ANOTHER JUDGE: STATUTE. On disqualification of a judge in a criminal case under Revised Statutes, 1889, sections 4174, 4178, where a judge requested by the regular judge to try a cause is unable to do so, the disqualified judge may select another.

2. **Criminal Law:** EMBEZZLEMENT: OFFICER OF CORPORATION: EVIDENCE. Where the by-laws of a corporation provide that its secretary in addition to certain specified duties shall perform such other duties as the directors may require, on prosecution of the secretary for embezzlement evidence of usage and custom is admissible to show that the money came into his hands by virtue of his employment.

3. ———: ———: ———: ———. So it is competent to show irrespective of the by-laws that it was part of defendant's duty as secretary to receive and account for the money which he was charged with having embezzled.

4. ———: ———: ———: ———. On the prosecution of the secretary of a corporation for embezzlement of its money the delivery to him of packages of money addressed to a corporation of which the existing one was the successor, *held*, competent.

5. ———: ———: ———: ———. Evidence in such case that an independent corporation having the same president as the one of which defendant was secretary, owed him a sum of money exceeding the amount claimed to have been embezzled is irrelevant.

6. ———: ———: ———: ———. Evidence of the manner in which the stock of the corporation was paid was irrelevant.

7. ———: ———: ———: INSTRUCTIONS: STATUTE. On trial of an indictment under Revised Statutes, 1889, section 3549, of an officer of a corporation for embezzlement of its assets, an instruction directing an acquittal, unless the defendant, when he converted the money, intended to deprive his employer of it, is properly refused.

8. ———: INTENT. Where an act forbidden by law is intentionally done, the criminal intent is thereby consummated.

*Appeal from  Cooper  Circuit  Court.*—Hon. D. W. Shackleford, Judge.

Affirmed.

*Charles P. Johnson* and *Charles T. Noland* for appellant.

(1)  The circuit court of Cooper county had no jurisdiction to try this cause.  Judge H. L. Edmunds had no power, right, or authority to again assume jurisdiction, and his appointment of Judge Dorsey W. Shackleford was null and void.   The entire proceedings under Judge Shackleford were *coram non judice. State v. Moberly,* 121 Mo. 604; *State v. Hayes,* 81 Mo. 574; s. c., 88 Mo. 344;  *State v. Schaffer,* 36 Mo. App. 589; *State v. Shea,* 95 Mo. 85; *State v. Shipman,* 93 Mo. 147; *State v. Thomas,* 32 Mo. App. 159; *State v. Hopper,* 71 Mo. 425; *State v. Worrell,* 25 Mo. 205; *Lacy v. Barrett,* 75 Mo. 469; *Henderson v. Henderson,* 55 Mo. 544; *Dawson v. Dawson,* 29 Mo. App. 521; *Gale's Adm'r v. Mitchie,* 47 Mo. 326; *Goodhue v. People,* 94 Ill. 37; *Colvin v. Six,* 79 Mo. *loc. cit.* 200; *State v. Daniels,* 66 Mo. 192.   (2) The court's theory, as shown by the admission of testimony and the instructions given, that it was immaterial whether the by-laws authorized the secretary to receive and disburse money belonging to the corporation, if by custom and usage such duties had for some time devolved upon the secretary, even though the by-laws expressly provided that such duties should be performed by the treasurer, was error.  *State v. Bolin,* 110 Mo. 209; *State v. Heath,* 8 Mo. App. 99; *State v. Heath,* 70 Mo. 565; *Hamuel v. State,* 5 Mo. 260; *State v. Findley,* 101 Mo. 217.   (3) The evidence of E. C. Morgan, as to money expressed between February 15 and October 16, 1891, and consigned to the Rainwater-Boogher

Hat Company, and belonging to that corporation, was no evidence of money received by Silva belonging to the Rainwater-Bradford Hat Company, and was inadmissible under this indictment. *State v. English*, 67 Mo. 136; *State v. Fay*, 65 Mo. 490; *State v. Chamberlain*, 75 Mo. 382; *State v. Horn*, 93 Mo. 190; *State v. Sharp*, 106 Mo. 106. (4) The court erred in refusing to allow defendant to prove the extent of the business done by the Rainwater-Bradford Hat Company, and the amount of the expenses, and that the corporation stock was paid for by estimating an old stock of goods as so much cash money, to wit, $100,000, and by estimating old outstanding accounts due the Rainwater-Boogher Hat Company, and the firm of Rainwater-Boogher & Co., aggregating some $165,000, as being of the cash value of $150,000, when in fact $80,000 of these accounts within two wears were charged to profit and loss as worthless, and no evidence as to the others having been paid. (5) The intent to feloniously convert to one's own use and deprive the owner of his property is an essential element of the crime of embezzlement. The instruction offered by defendant and refused by the court correctly stated the law and should have been given. The instructions given by the court entirely ignored this essential element. *State v. Reilly*, 4 Mo. App. 392; *State v. Pratt*, 98 Mo. 482; *State v. Jennings*, 98 Mo. 495; *State v. Simpson*, 73 N. C. 269; *State v. McCollum*, 44 Mo. 343; *Ridgeway v. State*, 41 Tex. 231; 4 Am. & Eng. Encyclopedia of Law, 746; *Huntsman v. State*, 12 Tex. App. 619.

*R. F. Walker*, attorney general, *Morton Jourdan*, assistant attorney general, and *C. O. Bishop* for the state.

(1) The indictment is framed under Revised Statutes, 1889, section 3549, follows the language of the

statute, and is sufficient. *State v. Adams*, 108 Mo. 208; (2) Judge Shackleford had legal jurisdiction of the cause. *State v. Higgerson*, 110 Mo. 203, is not authority to the contrary. (3) The instructions given by the court of its own motion were correct statements of the law. The fraudulent intent required by the statute was properly and sufficiently stated. *State v. Adams*, 108 Mo. 208; *State v. Porter*, 26 Mo. 201. (4) The refused instructions asked by appellant were rightly refused and the verdict is fully supported by the evidence. See *State v. Musick*, 101 Mo. 260; *State v. Alexander*, 119 Mo. 447. (5) It was competent to show by experts who had spent weeks in the examination of the books and accounts of appellant the result of the examination. *Benevolent Society v. Lackland*, 97 Mo. 137; *State v. Findley*, 101 Mo. 217. (6) The duties of defendant as secretary were properly shown by evidence of his usual or customary duties.

GANTT, P. J.—The defendant was indicted at the January term, 1894, of the St. Louis criminal court for embezzlement. He was duly arraigned and a plea of not guilty entered.

At the March term, 1894, he filed his affidavit against Judge Edmunds, the judge of that court, whereupon Judge Edmunds made an order reciting that in his opinion no suitable or competent person could or would be chosen or elected as special judge to try said cause, and therefore he ordered said cause to be set down for trial on the second day of April, 1894, and requested Judge Hirzel, the judge of the thirteenth judicial circuit, to hold said court to try said cause to pass upon the application of defendant for a change of venue, should one be presented, and to determine all issues and do all things necessary and proper for the final determination of said cause.

Judge Hirzel appéared on April 2 and Judge Edmunds vacated the bench in pursuance of the order above referred to. Thereupon defendant filed his motion for a bill of particulars, which motion was overruled by Judge Hirzel, and thereupon the cause was, by consent, continued to the next term and was ordered docketed for May 7, 1894, and on the seventh day of May, by consent, the cause was again continued to May 28, on which last mentioned day the parties filed a stipulation continuing the cause until June 18. When Judge Hirzel heard of this last stipulation, he addressed Judge Edmunds the following communication:

"STATE OF MISSOURI, ⎫
  CITY OF ST. LOUIS. ⎰

"In the Criminal Court of the City of St. Louis. (R. S. 1889, Section 4178.)

"*To the Hon. H. L. Edmunds, Judge of the Criminal Court:*

"The undersigned judge of the thirteenth judicial circuit, respectfully shows and states that he has been heretofore called in by your Honor to try in your court the case of the State of Missouri *v.* Louis J. Silva, now pending in this court; that the cause aforesaid was called for trial several times while the undersigned was acting as judge in said cause; that all parties announced ready to try said cause on Monday, the twenty-eighth day of May, 1894, and the undersigned duly appeared to try said cause as such judge; that it now appears that without any consent on the part of the undersigned, the attorneys for the state and for the defense agreed by stipulation to continue said cause for trial to Monday, June 18, 1894, or later; that the undersigned, by reason of judicial work in his own circuit, will be, and is, wholly unable to try said cause on June 18, 1894, or at any other time, and he is therefore obliged

to refuse, and hereby does refuse, to serve any further as judge in said cause.

"Respectfully submitted.

"RUDOLPH HIRZEL, Judge."

When Judge Edmunds received this communication the record shows he was presiding in said court and the defendant and his counsel and the circuit attorney were present, and thereupon he caused the following order to be made of record:

"It therefore appearing to the court that the Hon. Henry L. Edmunds, judge of this court, is incompetent to hear and try this cause by reason of the fact that the affidavit of said defendant, supported by affidavits of two reputable persons not of kin or counsel for the defendant, has been duly filed, alleging that the judge of this court is so prejudiced against the said defendant that said defendant can not obtain a fair and impartial trial herein; and the court being of the opinion that no suitable or competent person can or will be chosen or elected as special judge to try this cause and determine the issues herein, and the Hon. Rudolph Hirzel, judge of the thirteenth judicial circuit, failing and refusing to hold court and try said cause, as heretofore appointed, notified, and requested so to do, therefore the court doth order that this cause be specially set and docketed for trial on the eighteenth day of June, 1894, and doth appoint, notify, and request the Honorable Dorsey W. Shackleford, judge of the fourteenth judicial circuit of the state of Missouri, to be and appear in our St. Louis criminal court on said eighteenth day of June, 1894, to hold court to try said cause, to pass upon the application of said defendant for a change of venue, should such application be presented to the court, to determine all issues herein, and to do all things as may be necessary and proper for the final determination of said cause in said court."

No exception was saved by appellant at the time to this action of the court.

On June 18, 1894, in accordance with the foregoing order, Judge Edmunds again vacated the bench, and Hon. D. W. Shackleford appeared and took charge of the cause as special judge; whereupon appellant filed his application, supported by statutory affidavits, for a change of venue on the ground of prejudice of the inhabitants of St. Louis city, and Judge Shackleford awarded the change of venue and ordered the cause removed to the circuit court of Cooper county; and on the following day appellant, in open court, Judge Shackleford presiding, filed his bond for his appearance before the circuit court of Cooper county on Friday, June 22, 1894, and from day to day, etc. The cause was set for trial in said circuit court of Cooper county on June 22, 1894, but appellant failed to appear and the cause was continued to July 16, 1894, on which day appellant appeared and filed his application for a continuance. The cause was laid over to July 19, 1894, on which day the application was overruled (no exception thereto being saved). The cause then proceeded to trial before a jury, resulting in the conviction of appellant, and his punishment was assessed at three years' imprisonment in the penitentiary. From that sentence he appeals to this court.

The evidence on the part of the state is substantially as follows: The Rainwater-Boogher Hat Company was incorporated under the laws of the state of Missouri, December 2, 1889, and its name was changed under the certificate of the secretary of state, October 16, 1891, to the Rainwater-Bradford Hat Company, and carried on its business in the city of St. Louis. Appellant was secretary of the corporation continuously from its original creation. In connection with the ordinary clerical duties of the secretary of a corporation, by

arrangement with the officers of the company, accepted and acted upon by him, he discharged the usual duties of a principal bookkeeper and cashier, a position which he had for many years occupied with the firm of Bradford, Rainwater & Company, the business predecessors of the corporation, and received an annual salary of $2,500. He kept the chief books of the company, received all moneys put into the company, kept an account of the same, deposited the money in bank, made out statements of the condition of the company, received all moneys into the corporation in the general business, kept the cash books and other books in which all entries of transactions of the company were made under his supervision; moneys that came in from day to day were received by him and deposited through him in the bank; he made up checks for demands that had been made upon the company, which were signed by the proper officers of the company; he made up trial balances and statements; he attended the meetings of the board of directors and kept a record of their proceedings; he performed the general duties of chief bookkeeper and accountant for the concern. As a matter of fact he was the custodian and director of all the money affairs of the corporation, and the salary above mentioned was all the compensation he received for all his services. He had no authority to sign checks —that was usually done by the treasurer, and in his absence, by the president and vice-president; but all checks were prepared by appellant, and the checkbooks kept by him; and the checks so drawn by him were usually signed by the officers named without question, being presumed to be in the regular business of the company; and so great was the confidence reposed in him that his books and accounts were never supervised or examined, and the trial balance made by him semiannually accepted and acted upon as correct and

accurate statements of the condition of the corporation's affairs.

For nearly a year prior to September, 1893, the vice-president, Mr. Bradford, had been an invalid and absent from the city, and had made his son-in-law, Mr. Blossom, his attorney in fact. On September 10, 1893, Mr. Blossom took occasion to examine the cash book kept by appellant, under the date of May 31, 1893, the date of the last preceding trial balance, and found that the figures there carried as a balance agreed with the figures upon the trial balance, which appellant had at that time said was a correct statement of the books; but in adding a column of figures upon the books, Blossom discovered a serious discrepancy. He testified: "While I was looking at the page, I added up the column, finding a difference of a thousand dollars, about which I said nothing at the minute, but asked him (appellant) some other questions in connection with his bookkeeping, various questions and details, and I finally asked him his cash balance on May 31. He said, 'About right.' I asked him some more questions. I said, 'What do you mean by "about right."' 'Well,' he said, 'it was pretty close,' giving me to understand there was no material difference. I asked him to show me his slip showing the items which went to make up this cash balance as shown by his book, but he said he did not have it; he had torn it up, did not keep it. Then I asked him to add up his cash book. He added it up a couple of times. I noticed when he came to the thousand dollar column he could not make the figures come right. I said, 'Yes, that is the way I made it.' * * * 'Your cash must have been over eleven hundred dollars short.' He said there was some mistake. We had some further conversation relating to the details of bookkeeping, and finally I said to him: 'Silva, how long have you been forcing fraudulent

balance sheets on this house?' He inclined to be indignant; said he had never forced any. I said, 'This one seems to be fraudulent.' He said, 'It is a mistake;' said that he would be able to rectify any mistake, that he had property, etc.''

Two expert accountants were then engaged to make a thorough examination of the books kept by appellant, and after they had been at work a few days they discovered many irregularities. Appellant said the cash would be found very largely short, and when asked how much, replied that he could not tell; but afterward told Major Rainwater it was about $60,000, and again that he did not think it would go over $75,000, and admitted that he had spent the money in various ways, largely in speculating in grain. The examination of the experts was concluded about the last of September, and disclosed, by the entries of appellant upon the cash book, that he had for years carried on a system of false entries, and that between February 15, 1891, and September 29, 1893, there was a total deficit of $36,512.11, shown (1) by the false carrying of balances from day to day, from pape to page and from book to book, purporting to be amounts of appellant's disbursements of cash in the daily business; and (2) by false footings of cash actually received by him from day to day. He was at once relieved and a successor appointed, to whom he turned over all the funds in his custody, in cash, checks, and bank deposits, amounting to $7,709.14, when there should have been $114,773.77. Seeing the condition of affairs, and the experts reporting the corporation insolvent, the company at once suspended and made an assignment.

Going into particulars, it was shown that appellant had, in September, 1893, failed to charge himself with the proceeds of a discount which had come into his

hands of $7,343.35; that he had paid with the company's check of $2,000 an individual indebtedness to a grain commission firm, in February, 1893; other individual indebtedness in the same way, amounting to $554.50, during the year 1892; and that he had received remittances from various customers, by mail and express, during 1891–1893, an aggregate sum of $7,484.89, which he had not accounted for, establishing a *corpus delicti* of $17,382.74, *neither disproved nor denied by appellant.*

The testimony on the part of the appellant tended to show as follows: For several years prior to September, 1893, the St. Louis Merchants' Bridge and Terminal Railway Company (of which Mr. Rainwater was president) had been gradually acquiring real estate in the city of St. Louis for railway purposes, and to avoid publicity the deeds to the various properties had been made to appellant, who had made a declaration of trust regarding the same, and often the rentals collected by the real estate agents from the properties would be placed in his name, and he would, from time to time, at the request of the railway company, execute his individual notes in relation to these properties; but it did not appear in any way that these transactions were, or were to be, kept upon the books of the Rainwater-Bradford Hat Company, nor that the transactions of appellant shown by the state had anything whatever to do with the railway company's business. After the appellant was relieved he reconveyed to the railway company all of the real estate above mentioned, amounting in value to about $250,000.

Appellant, testifying in his own behalf, stated that he had been connected with Rainwater in the hat business about twenty-three years; had been appointed secretary of the first corporation at the time of its organization, and had held no other office since. The

capital stock consisted of merchandise, cash in bank, outstanding accounts, a capital of $250,000, and a surplus of $4,000; the merchandise was valued at $100,000. The last fiscal statement was made about December 1, 1892, at which time two separate statements were made, one of which was submitted to the board of directors, and the other to the actuary of the New York Hat Association, representing the eastern creditors of the company; there was a difference between the two of $80,000; in one of them the assets were ostensibly reduced by that sum, and the liabilities reduced accordingly. This sum consisted in outstanding accounts of country customers, which had originally been put into the concern as so much cash, and had been carried ever since as assets; on the other hand, Rainwater and Bradford were creditors of the company to the extent of $80,000. The statement for eastern creditors was made by appellant at the request of Rainwater, and showed the liabilities of the company to be $80,000 less than they actually were, and the assets to be less in the same amount. This statement was "reconciled" by a statement on the minute book of the corporation, surrendering, according to the by-laws, $80,000 outstanding accounts for the benefit of Rainwater and Bradford; that is, $80,000 taken in that statement from the assets practically to secure Rainwater and Bradford, made a difference in the ostensible assets of the company. This testimony of appellant, however, was not corroborated by the minute book, which was introduced in evidence by himself, and in which no such record occurred.

On the state's objection, appellant was not permitted to state what the salary and expense account of the corporation was. He made no explanation of the alleged false entries in his books, and denied none of the conversations or confessions shown by the prosecution. The by-laws of the corporation were introduced

State v. Silva.

by appellant, for the purpose of showing what the duties of the secretary were, as well as those of the treasurer and other officers.

The court instructed the jury upon the presumption of innocence, reasonable doubt, credibility of witnesses, and the competency of defendant as a witness, and then proceeded:

"You are instructed that the evidence admitted tending to show that in the organization of the Rainwater-Bradford Hat Company, accounts were taken in payment of subscriptions to the capital stock; that accounts due said company may have been withdrawn by any stockholder with the permission of the company, and with which the defendant was not connected; that the Rainwater-Bradford Hat Company and the St. Louis Bridge and Terminal Railway Company interexchanged checks; and the evidence in relation to the real estate transactions in which the defendant held title to real estate on behalf of the St. Louis Bridge and Terminal Company has not been connected with the issues in this case, and will, therefore, be disregarded by you in considering what your verdict will be.

"To warrant a conviction of the defendant you must find from the evidence that the Rainwater-Bradford Hat Company was, prior to the year 1894, an incorporated company, and that the defendant was its secretary, and that there came into his possession or under his care, by virtue of his office as such secretary, money belonging to said incorporated company, and that at any time within three years next before the fourteenth day of February, 1894, the defendant, while over the age of sixteen years, did, at the city of St. Louis, in the state of Missouri, convert to his own use $30 or more of the money of the Rainwater-Bradford Hat Company, that came into his possession or under his care by virtue of his said office as secretary of such

company, with intent then and there to convert the said money to his own use without the assent of said corporation; but if you find these facts, then you will find the defendant guilty and assess his punishment, etc.    The jury are instructed that it devolves upon the state to prove that the defendant was secretary of the Rainwater-Bradford Hat Company, and that any money of said company alleged to have been converted by him to his own use came into his possession or under his care by virtue of his office as such secretary; and in determining this you should consider the by-laws of the corporation; but it is not necessary that the proof should be made by the by-laws or written rules of said corporation, or that the by-laws should confer upon the secretary the authority to receive money belonging to the said corporation, but it is sufficient if the jury believe from the evidence by the custom and usage of said corporation the duty was devolved upon the defendant, as its secretary, to receive moneys belonging to said incorporated company, and that the money charged to have been converted by defendant to his own use came into his possession or under his care as such secretary, under and in accordance with the custom and usage adopted and practiced by said corporation in the transaction of its business.

"It is not necessary that the state should prove by direct and positive evidence that the conversion (if the jury find that there was such a conversion) was without the consent of the Rainwater-Bradford Hat Company; it is sufficient if, from the evidence, the jury are satisfied that it was without such consent."

At the close of the case, appellant demurred to the evidence, and asked, among others, the following instructions, which were refused:

"1.    The jury are instructed that the failure to pay over money by an officer of a private corporation

after it is collected or received does not of itself constitute embezzlement, nor does the mere conversion of it to such officer's own use after collection and failure to turn it over constitute embezzlement, but there must be a felonious intent at the time of the commission (*sic*) to appropriate it to the officer's use, and to deprive the owner of it; and the jury are instructed that, unless they find and believe from the evidence that the defendant, at the time he converted the money of the Rainwater-Bradford Hat Company to his own use (if you find he did so convert it) did so with the felonious intent to deprive said company of the use thereof, they will acquit him.

"2.    The jury are instructed that if they believe from the evidence that (*sic*) used and converted to his own use money belonging to the Rainwater-Bradford

"2.    The jury are instructed that if they believe from the evidence that (*sic*) used and converted to his own use money belonging to the Rainwater-Bradford Hat Company, but with no intent to cheat and deprive said company of said money, and replace and restore it with other money when demanded or called on for a settlement, and at the time had property consisting of real estate and houses with which he honestly expected to be able to replace said money, and failed to replace and restore said money by reason of unforeseen circumstances which he could not control, the defendant is not guilty of embezzlement.

"3.    The jury are instructed that if they believe from the evidence that where erroneous additions and figures in the cash book are shown, if they find such erroneous additions were made, not for the purpose of covering up a conversion of money made at that time, but for the purpose of covering up conversions made prior thereto, then the jury should not consider such evidence as showing an embezzlement under this in-

dictment, unless they further find that such erroneous additions were made to cover conversions which took place since February 14, 1891; and if they are in doubt as to whether such erroneous additions were made to cover up conversions before or after February 14, 1891, they should give the defendant the benefit of such doubt.  *  *  *.

"5.  The defendant is indicted as the secretary of the Rainwater-Bradford Hat Company, and the jury should not consider or hold the defendant liable for any money which came into his possession, custody or control in any capacity except that of secretary; and the fact that he held dual positions, and while acting, not as secretary but in some other capacity, received and converted to his own use money belonging to that corporation, is no proof of his guilt under this indictment.

"6.  If the jury believe that the defendant did not use the money of the Rainwater-Bradford Hat Company without the consent of the said company, and that said consent to the use of said money was given by the president, C. C. Rainwater, they must acquit defendant; and in determining whether the said Rainwater did consent to the use of said money by defendant, it is not necessary for the defense to establish such fact by direct and positive evidence, if the jury believe from all the circumstances in evidence that said Rainwater consented to such use of said money, or acted in such a manner as to lead defendant to believe that the said Rainwater did consent, and thereby caused defendant to believe such consent had been given.

"7.  If the jury believe from the evidence that the defendant was secretary of the Rainwater-Bradford Hat Company, and that he also, in addition to performing the duties of that office kept the books of the corporation, and in addition also performed some of

the duties of treasurer of said corporation, and that the money alleged to have been embezzled came into his possession and control, not by virtue of his office as secretary, but that said money came into his possession, custody and control by virtue of his performing duties of treasurer, then the jury must acquit."

"10. The court instructs the jury that a mere shortage or deficiency in the accounts is not sufficient to sustain a conviction under the indictment in this case..

"11. The court instructs the jury that the evidence adduced shows that no money came into the possession or control of defendant as secretary of the Rainwater-Bradford Hat Company, and they will return a verdict of not guilty.

"12. The jury are instructed that the evidence adduced discloses the fact to be that the treasurer of the Rainwater-Bradford Hat Company was the only officer authorized to receive money for and on account of said corporation and to disburse the same in the payment of its liabilites, and if the jury find that the defendant performed the duties of treasurer by reason of the consent of the officers of the corporation and in accordance with the long-continued custom, and that the money alleged to have been embezzled came into his possession and under his control by reason of his acting as treasurer, then the jury must acquit defendant of embezzling said money as secretary."

In addition to the conventional grounds, defendant assigns as error the refusal of the court to oust itself of jurisdiction. The motion in arrest impugns the indictment and verdict, and also the jurisdiction of the court.

I.   Upon the foregoing record it is strenuously insisted that the circuit court of Cooper county was without jurisdiction to try this cause. The position of

counsel for the defendant is that the affidavit of preju-
dice against Judge Edmunds totally disqualified him
to make any order or take any step whatever in the
case after he had called in Judge Hirzel.   If they are
correct we have this anomalous state of affairs:   The
judge of another circuit is requested to try a cause at
a certain time.   He arranges the docket of his own
circuit in order to perform the duty required.   He
finds, however, upon his arrival at the court which he
has been requested to hold that the cause must be con-
tinued to a time that will conflict with the docket in
his own circuit and he thereupon declines further to
act, and it results the prisoner can not be tried at all
because the law nowhere authorizes said judge to call
in another judge, and, if defendant's contention be cor-
rect, the regular judge not only can not call in another
judge, but he is equally powerless to order an election
of a special judge.   That no such impotent conclusion
as this was within the contemplation of the legislature
is evident.

By section 4174, Revised Statutes, 1889, it is pro-
vided that the judge of any circuit or criminal court shall
be deemed incompetent to hear and try any cause pend-
ing upon indictment or criminal prosecution in his court:
"When the defendant shall make and file an affidavit,
supported by the affidavit of at least two reputable
persons, not of kin to or counsel for the defendant,
that the judge of the court in which said cause is
pending will not afford him a fair trial, or will not
impartially decide his application for a change of venue
on account of the prejudice of the inhabitants of the
county or circuit."

By section 4178 it is provided that if the judge
shall be incompetent by reason of any of the causes
mentioned in section 4174 and no suitable person will
serve if elected to try the cause or the judge shall be of

opinion that no suitable person can or will be elected he need not order an election of a special judge but may set the trial for some day of term or some day in vacation and notify and request the judge of some other circuit to appear and hold the court for the trial of said cause, and it is made the duty of the judge so requested to appear and try the cause and during said trial and in relation to said cause he shall possess all the powers and perform all the duties of a circuit judge of said circuit, *provided*, however, "if the judge so requested shall fail to appear and hold the court at the time appointed for the trial of said cause, *the judge of said court* shall reset said cause for trial and proceed to the election of a special judge to try said cause, *or may* notify and request the judge of *some other circuit to appear and try said cause as heretofore provided.*"

In *State v. Higgerson* 110 Mo. 213, this statute came before this court for review. In that case the regular judge of the Cooper county circuit court was disqualified by the affidavit of prejudice and he ordered an election of a special judge. Mr. Hutchinson was elected. The defendant's application for a change of venue was heard by the special judge and a change of venue granted to Moniteau county in the same circuit. Mr. Hutchinson not appearing at the March term, 1890, of the Moniteau court, the cause was continued, the regular judge presiding. At the September term, Mr. Hutchinson again not appearing, on motion of the prosecuting attorney, the clerk of the court held an election and Mr. Hazell was elected special judge to try the cause, defendant duly objecting and excepting. The defendant was convicted, and appealed. We held that, inasmuch as it nowhere appeared that Mr. Hutchinson had been notified of the setting of the case or *had refused* to try the cause, the election of another special judge was error, Judge THOMAS, who wrote the

opinion, saying: "The special judge may refuse to act, which would be tantamount to a resignation, and in such event the court should proceed to the election of another special judge to try the case;" and, in summing up, remanded the cause "with directions that Judge HUTCHINSON try the case, or, if he refuse to serve, that the court, presided over by the regular judge, proceed to order the election of another special judge, or to request the judge of another circuit to try the case, as provided by statute."

In the case at bar Judge HIRZEL unequivocally refused to serve any further. Under the circumstances it was the plain duty of Judge EDMUNDS, under the statute, to order an election of another special judge or request some other judge to appear and try the cause, and this he did. The cases cited by counsel as to the duty of special judges to try the case until its final determination in no way affect the question now before us. Judge HIRZEL had no authority to provide for the trial of the cause which he was specially requested to try but refused. The duty of providing for a judge to conduct that trial devolved upon the judge of the St. Louis criminal court, not upon the judge of the thirteenth circuit. When Judge HIRZEL refused to act further it was as if he had never consented to act or had resigned his office, or had died. His acceptance in the first instance did not transfer the cause to his circuit so as to devolve it upon his successor in his circuit in case of his death or resignation, but it remained a cause pending in the criminal court of St. Louis until Judge SHACKLEFORD granted a change of venue to Cooper county. Accordingly, we find no error in Judge EDMUNDS's order calling in Judge SHACKLEFORD, even had it been saved by a proper exception at that time.

II.    It is next insisted that the circuit court erred in admitting testimony and instructing the jury that it was not necessary that the ·duties of the defendant should appear entirely by the written by-laws or rules of the Rainwater-Bradford Hat Company, but it would be sufficient if the jury should believe that by the custom and usage of said corporation the duty was devolved upon defendant as its secretary to receive moneys belonging to said corporation, and that the moneys charged to have been embezzled and converted by him to his own use came into his possession as such secretary in pursuance of said usage and custom adopted and practiced by said corporation in the transaction of its business.

The by-laws provided that, in addition to keeping the records of the company and its corporate seal and recording the transfers of stock, the secretary "shall perform such other duties and orders of the directors of said company as may be required in the transaction of the business of said company." It was then purely a matter of evidence what duties the directors of the corporation had required defendant to perform.

It is now settled law that when in the usual course of business of a corporation an officer has been allowed to perform certain duties and functions of the corporation his authority to represent the company may be implied from the manner in which he has been permitted by the directors to transact its business. Usual employment is evidence of the powers of an agent, and it is no longer essential that his powers and duties shall be prescribed by formal resolutions of the board of directors on the records of the corporation. *Sparks v. Dispatch Transfer Co.*, 104 Mo. 531, and cases cited.

Hence, if the directors required of defendant, as they were authorized by the by-laws to do, to keep the company's books, to receive moneys in the ordinary

routine of their business and account therefor, and he assented thereto, such employment was clearly within his duties as *secretary*, and when he received such moneys,. it *was "by virtue of his employment" as secretary*, and it was perfectly competent to show by evidence *aliunde* the by-laws what duties the directors actually required at his hands.

The authorities go 'further. Thus, it was held that where a clerk was entrusted to receive money *at home* from out door collectors, received it abroad from an out door customer, such receipt of the money was considered *"by virtue* of his employment" and within the act. *Rex v. Beechey*, Russ. & Ryan, C. C. 319; Barbour's Crim. Law [2 Ed.], page 152; *Rex v. Smith*, Russ. & Ryan, C. C. 516.

In *Hastie's* case, Leigh & Cave's C. C. 269, the prisoner was the secretary of a building society whose surplus funds were lent upon mortgage. It was no part of his duty as defined by the rules to receive the money when the mortgages were redeemed but the rules had not been strictly adhered to and the prisoner had been in the habit of receiving this money, giving in exchange for it receipts previously signed by the trustees. On one occasion he embezzled the money so received and it was held he was rightly convicted, inasmuch as he received the money *by virtue of his employment as ascertained by the actual course of business.* It was submitted in that case, as in this, by counsel for the prisoner, *that the by-laws*, coupled with the statutes, *were the only* test of the prisoner's employment but Chief Justice ERLE said: "The course of conduct which has been followed in this case is evidence from which the jury might reasonably infer that he was employed by the trustees to receive this money." See, also, *King v. Barker*, Dowling's N. P. Cas., 19; *Regina v. Adey*, L. J. N. S. 19 C. L. (Magistrates), 149;

2 Bishop's New Crim. Law, sec. 340 par. 3; *State v. Heath*, 8 Mo. App. 99.

The supreme court of Kansas, in *State v. Spaulding*, 24 Kan. 1, upon an objection like this, said: "We hold that when one assumes to act as agent for another, he may not, when challenged for those acts, deny his agency; that he is estopped, not merely as against his assumed principal, but also as against the state; *that one who is agent enough to receive money, is agent enough to be punished for embezzling it.*" Bishop's Crim. Law, [3 Ed.], sec. 367.

These authorities, and many others, clearly hold that it was entirely competent to show *aliunde* the by-laws that one of defendant's duties as secretary was to receive and account for the money, and his having been shown beyond all controversy, he was properly convicted of embezzlement of the money so received and converted to his own use.

III.   The objection to the evidence of the witness Morgan, tending to prove the delivery by him of money packages directed to the Rainwater-Boogher Hat Company to the defendant and identifying his signature to the receipt therefor is without merit. It was a conceded and established fact that the Rainwater-Bradford Hat Company had, by purchase become the owner of all the assets of Rainwater-Boogher Hat Company and the money thus received was as much the money of Rainwater-Bradford Hat Company as if it had accrued to it in the first instance.

IV.   The trial court very properly excluded from the consideration of the jury the testimony of defendant as to his connection with certain real estate transactions of the Merchant's Bridge and Terminal Company. The mere fact that Major Rainwater was president of the bridge company at the same time that he was president of the hat company in no manner affect-

ed the issue on trial. It was wholly immaterial if the bridge company owed defendant a sum largely in excess of his shortage to the hat company. Equally irrelevant was his evidence as to the manner in which the capital stock of the hat company was paid in. Whether it was paid in cash or in property was not the question, or whether it was paid in full, or in part only. This evidence did not tend in the slightest degree to account for the moneys of the hat company which were shown to have been paid to him and which he was charged with embezzling. It would have been sufficient for him to have accounted for the actual cash belonging to the corporation that had been traced into his hands, and to have left it to those who had the right to inquire into whether the stock was paid up. Such an issue as defendant sought to inject into the case would have been confusing and misleading.

V. There was no error in refusing defendant's instruction as to the intent necessary to constitute embezzlement. Of course there must be both an act and the evil intent, to constitute a felony, but counsel ignores the fact that the legislature has defined both the act and the intent necessary to constitute the crime of embezzlement. Section 3549, R. S. 1889. The only intent required to make the act of conversion of the corporation's funds felonious was the intent to convert said moneys to defendant's own use without the assent of his employer.

It was clearly within the power of the legislature to declare the unlawful appropriation of an employer's money by his agents and servants a crime. When the agent or servant takes his employer's money with the intent to convert it to his own use without the master's knowledge, that moment he is guilty of the criminal intent denounced by the statute. The law will not enter upon the inquiry with him as to his further

intention of returning the money at a later period or making good his shortage when called to account. It suffices for the state to prove an intent on the part of the defendant to do that which the law in fact forbids. The effort of counsel to have the court require the jury to find some other or further intent was to open the door for argument that the defendant might knowingly and intentionally do the very act which the law denounced as criminal and yet not be guilty, provided he did not intent to keep the money permanently or intended to return it in the future. But when an act forbidden by law is intentionally done the intent to do the act is the criminal intent which imparts to it the character of the offense, and no one who violates a law which he is conclusively presumed to know can be heard to say he had no criminal intent in doing it. *State v. Manley*, 107 Mo. 364; *State v. Pratt*, 98 Mo. 483; *State v. Adams*, 108 Mo. 208; *State v. King*, 86 N. C. 603; Bishop's New Crim. Law, sec. 300. The taking of an employer's money by his clerks or agents is legally wrong in itself.

The evidence fully sustained the charges in the indictment, and, no error appearing, the judgment is affirmed. SHERWOOD and BURGESS, JJ., concur.