CHARLES P. WELLS, JR., Appellant, v. NATIONAL SURETY COMPANY, et al., Respondents.

**St. Louis Court of Appeals, March 7, 1916.**

1. **BANKS AND BANKING: Removal of Cashier: Authority of Directors: Statute.** Under Sec. 1112, R. S. 1909, providing that the directors of a state bank may appoint or remove a cashier or other employee at pleasure, the directors have authority to remove a cashier before the expiration of the term for which he was employed, without liability for his compensation for the balance of the term.

2. **MALICIOUS PROSECUTION: Essential Elements.** To make out a case for malicious prosecution, it must appear that the prosecution terminated without a conviction, that it was instituted maliciously and without probable cause, and, while malice may be inferred from want of probable cause, no recovery can be had where there was probable cause.

3. ————: ————: **Probable Cause: Sufficiency of Evidence.** The directors of a state bank, before the expiration of the year for which plaintiff was engaged as cashier, terminated his employment. On the last day of his service, plaintiff, who insisted the directors had no right to terminate his employment, removed from the bank, without the knowledge or consent of its officers, funds sufficient to pay his salary for the remainder of the year, refusing to make restitution thereof when it was demanded. Defendants thereupon caused an information to be filed, charging plaintiff with embezzlement. The prosecution was subsequently dismissed, and plaintiff brought suit for malicious prosecution. *Held,* that the directors had the right, under Sec. 1112, R. S. 1909, to terminate plaintiff's employment before the expiration of the year for which he was engaged, at which time his right to compensation ceased, so that, in removing the funds from the bank, without the knowledge or consent of its officers, plaintiff was guilty of embezzlement, under Sec. 4550, and hence there was probable cause for the institution of the prosecution, barring a recovery by plaintiff for malicious prosecution, notwithstanding the prosecution was discontinued.

Appeal from Pemiscot Circuit Court.—*Hon. Frank Kelley,* Judge.

AFFIRMED.

*Shepard, Reeves & McKay* for appellant.

(1) The trial court sustained demurrer to the evidence of the plaintiff. It seemed to be the opinion of the trial court that, inasmuch as there was no direct proof showing that defendants, or either of them, procured the arrest of plaintiff, or had the criminal prosecution instituted, plaintiff failed to make a case. In this, we think the learned trial court was in error, and think there is no doubt that the fact the defendants were the procuring cause in the criminal prosecution can be established by facts and circumstances as well as any other fact can be thus established. Carp v. Queen Ins. Co., 203 Mo. 295; Vansickle v. Brown, 68 Mo. 627; Sharpe v. Johnston, 76 Mo. 660. (2) It is a well established principle of law that, in considering a demurrer to the evidence at the close of plaintiff's case, the evidence must be considered from the view point most advantageous to plaintiff and all legal inferences, facts and circumstances must be considered in his favor. March v. Vandiver, 181 Mo. App. 281; Gibson v. Ducker et al., 155 S.W. 426; Monk v. Wabash R. Co., 166 Mo. App. 692. (3) Malice or lack of probable cause can be proved by facts and circumstances the same as any other fact can be proven. Sharpe v. Johnston, 76 Mo. 660; Vansickle v. Brown, 68 Mo. 627; Callahan v. Kelso, 156 S. W. 717. (4) There must be a criminal intent before there can be a crime committed. In the instant case, defendants were fully appraised of the claims of plaintiff Wells to the money retained and knew there was no criminal intent. State v. Claybaugh, 138 Mo. App. 360. (5) The institution of a criminal prosecution for the purpose of coercing a debtor into payment of his debt is malicious in a legal sense. Meysenberg v. Engelke, 18 Mo. App. 346.

*A. Sloan Oliver* and *Arthur L. Oliver* for respondents.

Viewing this case in the most favorable light for appellant, he cannot recover. To make out a malicious prosecution case entitling plaintiff to go to the jury, at least three essential facts must be proven: (a) That the prosecution complained of has ended without a conviction of the plaintiff; (b) that the prosecution was instituted maliciously; (c) that the prosecution was without probable cause. In this case, the first essential fact was proven. But even if it be conceded that these defendants, or either of them, had anything whatever to do with the institution of the prosecution of Wells (a fact which we emphatically deny), who swears that they acted maliciously? If these defendants had anything to do with the institution of the prosecution, it must be presumed in the light of this record that when they ''saw'' Gossom the prosecuting attorney, they told him all the facts in connection with the alleged embezzlement. No other presumption here is sound. If they had done this and acting upon the advice of counsel, had actually signed and filed a complaint charging Wells with embezzlement, they would not have been liable under the evidence in this case. Pinson v. Campbell, 124 Mo. App. 260; Warren v. Flood, 72 Mo. App. 199; Sharpe v. Johnson, 59 Mo. 557; Wilkinson v. McGee, 178 S. W. 471.

NORTONI, J.—This is a suit for damages on account of an alleged malicious prosecution. At the conclusion of the evidence the court peremptorily directed a verdict for defendant, and plaintiff prosecutes the appeal.

It appears that plaintiff, Wells, was cashier of the Citizens' Bank of Hayti, and defendant National Surety Company, a corporation, the surety on his bond as cashier. Defendant Fred Morgan is the president of the Citizens' Bank of Hayti, while defendant Robert W. Inman is the claim adjuster of the National Surety Company. The records of the bank in evidence disclose

that plaintiff, Wells, was elected cashier of the Citizens' Bank of Hayti in February, 1911, for the *"ensuing year,"* at a salary of $75 per month; whereupon his bond as such was made by defendant surety company. About three months subsequent thereto, the board of directors of the bank, by resolution, requested plaintiff's resignation as cashier, and this he declined to submit. Thereupon the board of directors of the bank passed a resolution to the effect that his services as cashier of the bank should terminate on May 3, 1911.

Plaintiff remained in charge of the bank and its funds until the evening of May 3, but insisted all of the time that he was employed for one year, inasmuch as the record of the meeting of the board of directors, made in February, recited his employment for the *ensuing year*. Plaintiff offered to continue in the service of the bank for the term of one year from the date of his appointment in February, and insisted that the board was without authority to discontinue his employment, as it did, to take effect on May 3. In this view, plaintiff insisted that he was entitled to a year's salary, and, on the close of business May 3, he took out of the funds of the bank $600 to compensate the remainder of his year's salary at $75 per month. Plaintiff deposited this money in another bank to his personal credit, and thus converted it to his own use.

Thereafter, the officers of the bank notified defendant Surety Company to the effect that plaintiff had converted $600 of the bank's funds to his own use, and defendant Inman, claim adjuster for the Surety Company, immediately came upon the scene. Inman, together with defendant Morgan, president of the bank, and plaintiff, had a meeting, in which plaintiff was urged to surrender the amount of $600 thus taken from the funds of the bank and pay it over to the bank; but plaintiff declined to do this. The evidence tends to prove that thereupon defendant Inman, acting as the representative of the Surety Company, together with defendant Morgan, president of the bank, called upon the prosecuting attorney of Pemiscot county and laid the facts before him, and moreover that they in-

duced the filing of an information against plaintiff, Wells, by the prosecuting attorney, charging him with the embezzlement of $600 of the bank's funds. Plaintiff was taken into custody, entered into a recognizance for his appearance in court, and appeared at several terms of the court, to which the case was continued at the instance of the prosecution. Finally, the prosecution for embezzlement was dismissed by the State, and plaintiff then instituted this suit against defendant Surety Company, its agent, Inman, and Morgan, president of the bank, as for a malicious prosecution.

Manifestly the court properly directed a verdict for defendants, because it appears beyond peradventure that the prosecution was instituted on probable cause therefor. It is certain that the board of directors of the bank was authorized to discontinue plaintiff's services as cashier on May 3, as it did, and this is true notwithstanding the record of the board, made in February, to the effect that he was employed as cashier for the *"ensuing year."* Section 1112, Revised Statute 1909, which is parcel of the charter of the bank, provides "The directors may appoint and remove any cashier or other officer or employee at pleasure." This is a declaration of sound public policy on the part of the State in respect of such offices of trust. Of this statute plaintiff is deemed in law to have had full knowledge at the time of his employment in February, and it is certain that it entered as a silent factor into the contract entered into between the bank and himself for his services as cashier. The board of directors were fully authorized to discontinue his employment, as it did, on May 3, and plaintiff's salary was fully paid to that date. Therefore, when plaintiff seized upon the opportunity attending the last day of his employment in the bank to take from its funds $600, as if to compensate himself for nine months' unearned salary, without the knowledge or consent of the bank, and converted this money to his own use, he became an embezzler of that amount, in contemplation of law.

It is essential, to make out a case as for malicious prosecution—first, that the prosecution complained of

has terminated without a conviction; second, that the prosecution was instituted maliciously; and, third, without probable cause. It is true the prosecution for embezzlement appears to have been terminated through dismissing the charge against plaintiff, and it is true, too, that malice may be inferred from the want of probable cause—that is, from the facts and circumstances attending the situation, if it sufficiently appear that the prosecution is without probable cause. But if probable cause for the prosectuion appear, then no recovery may be had, in any event, in a civil action for damages, on account of such prosecution so instituted on probable cause.

The statute on embezzlement (section 4550, R. S. 1909) provides:

"If any officer, agent, clerk, servant, or collector of any incorporated company, or any person employed in any such capacity, shall embezzle or convert to his own use, . . . without the assent of his master or employer, any money . . . which shall have come into his possession or under his care by virtue of such employment or office, he shall, upon conviction, be punished, etc."

Plaintiff in his testimony states the fact to be, that he drew the $600 out of the moneys of the bank in his charge and under his control as cashier, and that he did this without the consent or knowledge of any officer of the bank save himself, also that he did not ask permission of anyone connected with the bank concerning it. Moreover, plaintiff testifies, "I put it [the money] to my own use, deposited it there [in another bank] and converted this amount of money to my own use there at that time." Obviously there is no question for the jury to consider under such testimony as this, for plaintiff confesses that he converted the funds according to the terms of the statute above quoted. It is true, under another clause of the same section of the statute—that pertaining to taking and making away with or secreting funds or property "with intent to embezzle"—the question of intent is one for the jury; but under the clause of the statute first above quoted,

the Supreme Court has several times declared that the statute forecloses the matter of criminal intent, when it appears that the agent or employee took the funds of the corporation and converted the same to his own use, without the assent of his employer. So much appears from the express and pointed admissions in plaintiff's testimony, for he says in so many words that he took the $600, without the knowledge or consent of his employer, or without the knowledge of the officers of the bank, to convert it to his own use, which he did at the time, and, indeed, persistently continued to hold thereafter.

In State v. Silva, 130 Mo. 440, 463, 464, 32 S. W. 1007, the Supreme Court considered the question in judgment here, under the provisions of the statute first above referred to, and declared the law as above indicated. The court said:

"The only intent required to make the act of conversion of the corporation's funds felonious was the intent to convert said moneys to defendant's own use without the assent of his employer. It was clearly within the power of the Legislature to declare the unlawful appropriation of an employer's money by his agents and servants a crime. When the agent or servant takes his employer's money with the intent to convert it to his own use without the master's knowledge, that moment he is guilty of the criminal intent denounced by the statute. The law will not enter upon the inquiry with him as to his further intention of returning the money at a later period or making good his shortage when called to account. . . . When an act forbidden by law is intentionally done the intent to do the act is the criminal intent which imparts to it the character of the offense, and no one who violates a law which he is conclusively presumed to know can be heard to say he had no criminal intent in doing it."

This same subdivision of the statute, under which defendant was informed against by the prosecuting attorney and charged with embezzlement, was more recently expounded by the Supreme Court in the case of State v. Lentz, 184 Mo. 223, 237, 241, 83 S. W. 970,

and the same view expressed concerning the intent essential to sustain a conviction under it. Indeed, the statute seems to be clear touching this, in that it denounces the act of an agent converting to his own use the money of his employer under his control without the assent of the employer. It appears conclusively from plaintiff's testimony that he converted $600 belonging to the bank to his own use without the consent of the bank, and, as the law declares such to be an offense, it is obvious that the prosecution was instituted on probable cause therefor, and the court very properly directed a verdict for defendant.

The judgment should be affirmed. It is so ordered. *Reynolds, P. J.,* and *Allen, J.,* concur.