Argued July 7, reversed and remanded October 21, petition for
rehearing denied November 23, 1976

PRATT, *Appellant,*
*v.*
KROSS, *Respondent.*

555 P2d 765

*John C. Caldwell,* Oregon City, argued the cause
for appellant. With him on the briefs was Hibbard,

Caldwell, Canning, Bowerman & Schultz, Oregon City.

*John L. Langslet,* Portland, argued the cause for respondent. With him on the brief was Martin, Bischoff, Templeton & Biggs, Portland.

HOLMAN, J.

**HOLMAN, J.**

Plaintiff brought an action for fraud under ORS 59.115(1)(b) of the Oregon Securities Law. Defendant's demurrer to the complaint, which was based upon failure to allege a cause of action, was sustained and plaintiff appealed from an order of dismissal which resulted from her failure to plead further.

Plaintiff's action was to recover a $15,000 investment she made as a limited partner in a business operated by defendant. The court sustained the demurrer on the specific ground that an ordinary limited partnership interest is not a security under the Oregon Securities Law, and whether this ruling is correct is the principal issue upon appeal.

The partnership agreement is set out as part of plaintiff's complaint. It provides that the parties form a limited partnership to engage in the business of operating and managing a promotional management company with defendant as a general partner and plaintiff as the limited partner. Plaintiff's payment to defendant was variously described as "consideration," "contribution," and "capital contribution." Profits and losses were to be apportioned between the parties with plaintiff's losses limited to her contribution. Plaintiff was to be an employee of the partnership, and for her unspecified duties she was to be paid a salary of $1,200 a month. Defendant was to receive a "management fee" of $1,800 a month and was to have full charge of the management, conduct and operation of the business. The agreement provides that defendant will not be responsible for the return of plaintiff's contribution but that any such return will be made solely from the partnership assets. The agreement does not provide when or under what circumstances such a return should be made. The agreement was for an indefinite term. As a whole, the agreement generally follows the form set out in *Advising Oregon Business,* Oregon State Bar CLE § 11.19 (1971).

Plaintiff alleges defendant approached plaintiff

with the proposal and, by false representations which are specifically alleged, induced plaintiff to agree to and to make her investment in the capital of the business. Six months after plaintiff paid the money she tendered the return of the agreement and demanded the return of her investment.

■ At the time of this transaction almost all fraud provisions of securities acts, including the uniform act and the federal act, are substantially the same. In commencing a discussion whether the transaction involved a security within the meaning of the fraud provision, it must be kept in mind that this problem is not related to a determination whether a security is required to be registered or approved administratively prior to sale. The following is a relevant statement from Coffey, *The Economic Realities of a "Security": Is There a More Meaningful Formula?*, 18 W Res L Rev 367, 371-72 (1967):

> "The considerations involved in determining whether a particular device or transaction is a security are not coextensive with the considerations used to determine whether full disclosure (by way of registration) or administrative approval should be required. This is evident because the statutes are written so that the residual but substantial protection of the anti-fraud provisions persists notwithstanding the applicability of an exemption from registration or state approval. It is improper to equate the question of whether an arrangement constitutes a security with the question of whether the registration or approval philosophies should be invoked. To do so automatically excludes from the definition of 'security' those transactions which possess enough troublesome characteristics to require liberal anti-fraud protection but which also involve enough balancing safeguards (or few enough additional worrisome characteristics) to eliminate the need for registration and state approval. For example, it cannot be said that an arrangement is not a security just because it is offered to only a few fully informed and sophisticated buyers so as to be exempt from registration or state approval. By their structure, the securities laws clearly imply that the features of a transaction which dictate

the requirement for registration or state approval are distinct from, and in addition to, the criteria employed in deciding the prior and more basic question of security *vel non.*" (Footnotes omitted.)

There is no doubt that the Oregon statute is in line with this statement. A 1967 amendment[1] was drafted by the Oregon State Bar Committee on Corporation and Partnership Law. The Committee's report[2] made it clear that it was the intention of the amendment that securities and transactions which were classified as exempt from registration would still be subject to the fraud provision.[3]

The definition of a "security," which substantially parallels the definition in most other acts, is encompassed within ORS 59.015(13)(a):

" 'Security' means a note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of interest or participation in a pension plan or profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, *investment contract,* voting-trust certificate, certificate of deposit for a security, certificate of interest or participation in an oil, gas, or mining title or lease or in payments out of production under such title or lease, or, in general, any interest or instrument commonly known as a 'security,' or any certificate of interest or participation in, temporary or interim certificates for, receipt for, guarantee of, or warrant or right to subscribe to or purchase any of the foregoing." (Emphasis added.)

Limited partnerships are neither specifically included nor excluded therefrom. Plaintiff contends the present transaction is an investment contract. Without holding that a limited partnership agreement is necessar-

---

[1] Or Laws 1967, ch 537.

[2] Oregon State Bar Committee on Corporation and Partnership Law, 1966 Oregon State Bar Committee Reports 24.

[3]

"This section describes the types of securities which are exempt from registration under section 7 of the bill. The anti-fraud provisions of the bill are applicable to exempt securities, which may not be the case under present law * * *. * * *." *Id.* at 26.

ily a security, this court has held in the past that such an agreement may be a security. In *State v. Whiteaker et al*, 118 Or 656, 247 P 1077 (1926), it held that instruments reciting payment for "units of interest" in a partnership not yet organized where control was to be retained by the selling partner were securities for the purpose of licensing. In *State v. Simons and Blanchard*, 193 Or 274, 238 P2d 247 (1951), it held that preorganization subscriptions in a limited partnership were investment contracts and securities for the purpose of registration. Apparently in response to an argument that the Act should be construed so as not to apply to a limited partnership transaction, the court said, 193 Or at 291:

> "* * * The weakness of the argument lies in the fact that we are not considering the actions of a group of persons voluntarily associated together in a joint venture, but rather a sale of securities to persons indiscriminately selected and having no bond of union other than the fact that they had money and the gambling instinct. * * *."

It further said at 193 Or 291-92:

> "* * * The use of the provisions of the Limited Partnership Act, ch 252, Oregon Laws 1943, as a cloak to legalize the acts of the defendants in this case is an inadmissible expedient."

Later in the same opinion it said, 193 Or at 293:

> "* * * Instruments of one kind or another do pass from hand to hand in the formation of any organization, whether a corporation, partnership, or what not. Sometimes such instruments must be regarded as securities under the law, sometimes not."

These statements indicate that the court at that time thought that public rather than private sale had much to do with whether the transactions should be treated as transactions involving securities. This leads us to defendant's contention that the transaction in question did not come within the fraud provisions of the Act and is not an investment contract because the agreement provided for an ordinary limited partner-

ship and was a one-to-one transaction without any public offering or solicitation. Some cases have held or implied that a public offering and solicitation are necessary to a finding that the transaction involves the sale of a security, as is held in *Simons,* supra. However, an examination of the recognized tests which have been evolved by courts, of the statutory scheme, and of the writings of scholars fails to disclose much support for a requirement of a number of transactions or of a particular manner in which the interests are offered and sold before the interests become securities.

The most prominent and often used definition of an investment contract is that laid down by the United States Supreme Court in the case of *Securities and Exch. Com. v. Howey Co.,* 328 US 293, 298-99, 66 S Ct 1100, 90 L Ed 1244 (1946). The Court said:

> "* * * An investment contract thus came to mean a contract or scheme for 'the placing of capital or laying out of money in a way intended to secure income or profit from its employment.' * * *.

> "* * * In other words, an investment contract for purposes of the Securities Act means a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party, it being immaterial whether the shares in the enterprise are evidenced by formal certificates or by nominal interests in the physical assets employed in the enterprise. * * *." (Footnote omitted.)

This definition has gradually come under pressure from 30 years' use. In some jurisdictions it has been modified, and in others it has not been used in limited circumstances. A major break was made by Justice Traynor in *Silver Hills Country Club v. Sobieski,* 55 Cal2d 811, 13 Cal Rptr 186, 361 P2d 906, 87 ALR2d 1135 (1961), wherein investments were classed as securities which were made in the construction of a country club and for which the investor secured only

the right to use the facility when it was completed. Justice Traynor wrote:

> "We have here nothing like the ordinary sale of a right to use existing facilities. Petitioners are soliciting the risk capital with which to develop a business for profit. The purchaser's risk is not lessened merely because the interest he purchases is labelled a membership. Only because he risks his capital along with other purchasers can there be any chance that the benefits of club membership will materialize." 361 P2d at 908.

An interest comes within this test if the investor contributes the capital necessary to finance the enterprise and receives in exchange the right to some benefit. The Oregon Court of Appeals in *State v. Consumer Business System,* 5 Or App 19, 29, 482 P2d 549 (1971) adopted this "risk capital" test for use in certain circumstances without rejecting the use of the *Howey* test in other circumstances.

The most recent test for an investment contract is one adopted by the Supreme Court of Hawaii in the case of *Commissioner v. Hawaii Market Center, Inc.,* 52 Hawaii 642, 485 P2d 105, 47 ALR3d 1366 (1971). The court said:

> "* * * [W]e hold that for the purposes of the Hawaii Uniform Securities Act (Modified) an investment contract is created whenever:
>
> "(1) an offeree furnishes initial value to an offeror, and
>
> "(2) a portion of this initial value is subjected to the risks of the enterprise, and
>
> "(3) the furnishing of the initial value is induced by the offeror's promises or representations which give rise to a reasonable understanding that a valuable benefit of some kind, over and above the initial value, will accrue to the offeree as a result of the operation of the enterprise, and
>
> "(4) the offeree does not receive the right to exercise practical and actual control over the managerial decisions of the enterprise." 485 P2d at 109. (Footnote omitted.)

[ 490 ]

Other than the recent use of the risk capital test by the Oregon Court of Appeals, the *Howey* definition or one similar thereto has been used in most instances by appellate courts in this state. Among others, see *Bergquist v. International Realty,* 272 Or 416, 537 P2d 553 (1975); *State v. Simons and Blanchard,* 193 Or 274, 290, 238 P2d 247 (1951); *Sperry & Hutchinson Co. v. Hudson et al,* 190 Or 458, 468, 226 P2d 501 (1951); *State v. Whiteaker et al,* 118 Or 656, 660, 247 P 1077 (1926). As previously indicated, none of these tests nor the Act has any provisions which prohibit a transaction from being an investment contract where it is a one-to-one transaction and there is no public offering or solicitation.

There are logical reasons to except a one-to-one agreement from the definition of a security. The risk of fraud is quantitatively reduced if the interests being sold are not peddled publicly. In a one-to-one transaction the chance to become informed may be greater. All of this is probably small solace to an individual who has actually been defrauded. Professor Coffey[4] in his previously mentioned work discusses the matter. We quote from him extensively because little could be added to his analysis.

"As the final topic of this article, the thorny problem of determining the proper analysis and treatment for isolated and private transactions, such as loan or purchase money notes and the small offering of limited partnership interests, will be discussed. The word 'isolated' will be used to refer to the limited number of transactions, and the term 'private' will describe the buyers' financial sophistication or their knowledge of the risk enterprise.

"First, it should be noted that the transactions now under consideration ordinarily possess, to some degree, all the essential economic characteristics of a security which were previously elaborated. Of course, it may happen that the buyer, in addition to being familiar with the operations of the risk enterprise (so that the transac-

[4] Coffey, *The Economic Realities of a "Security": Is There a More Meaningful Formula?,* 18 W Res L Rev 367 (1967).

tion is 'private'), may also play an active management role. In such a case, one of the essential economic elements of a security would be missing, and the 'joint control' doctrine would apply.

"What should be the result if the control prerogative is lacking? The question will be viewed first in the light of the present statutory structure.

"*(1) Implications of the Statutory Scheme.*—One has the feeling that the special fraud protection of the securities laws should not be applicable to the huge number of isolated transactions in which the buyers are financially sophisticated and familiar with the operations of the risk enterprise. However, as the statutes are presently written, the isolated nature of a transaction and the element of privateness are generally relevant only to the issue of whether a transaction should be exempt from registration or state administrative approval. If a transaction is isolated and private, the danger of fraud is reduced both quantitatively and qualitatively; in other words, these elements are factors which mitigate, but do not eliminate, the probability of fraud. * * *.

"* * * * *.

"In summary, there seems to be little statutory justification for excluding a transaction from 'security' classification solely because of its isolated and private nature. Still, for purposes of subsequent discussion, it should be remembered that the danger of fraud is qualitatively reduced if the transaction is private (involving buyers who are financially sophisticated or who have knowledge of the risk enterprise) and quantitatively reduced if the transaction is isolated (involving only a few buyers).

"*(2) The 'Cut-Off' Consideration.*—Although the present statutes may tend to indicate that a transaction should not escape security classification just because it is isolated and private, it may be argued that Congress and the state legislatures did not intend the special fraud procedures, protections, and remedies of the securities laws to be applicable to every isolated and private purchase money note or limited partnership interest. The policy of the argument would probably be one of judicial and administrative economy. The SEC, state

agencies, and the courts should not have to resort to the special anti-fraud machinery of the securities laws every time ABC Corp. and John Doe issue a purchase money note. In other words, there should be a point at which the applicability of all the provisions of the securities laws is 'cut off,' even when the economic realities of a security are present. Such an argument seems hard to digest simply on the ground that Congress and the state legislatures did not intend to be picayune. However, the argument gains some strength and perhaps tips the scales when it is thrown into the balance with the previous suggestion that the danger of fraud is reduced both qualitatively and quantitatively if a transaction is isolated and private.

"\* \* \* \* \*.

"In the absence of facts supporting a finding of 'joint control,' recent opinions evidence a willingness to classify limited partnership interests as securities, even when the offerings seem rather isolated and private.

"*(4) Summary.*—Unless the buyer actively participates in the control of the issuer's activities, it seems that there is virtually no statutory support for, and only slim judicial recognition of, the view that notes and limited partnership interests should be excluded from the 'security' category simply because they are isolated and private transactions. Nonetheless, if it be recognized that the danger of fraud is quantitatively and qualitatively reduced where a transaction is both isolated and private, there is persuasive force in the argument that the application of the special fraud procedures, protections, and remedies of the securities laws should be cut off short of the thousands of transactions which involve only a handful of knowledgeable or sophisticated buyers.

"In any event, if it were decided that transactions which are both isolated and private should be excluded from the definition of 'security,' such a result could be assured only by an amendment of the definition provisions. One result of such an amendment would be to exclude entirely from the coverage of the securities laws some of those transactions which are currently exempted only from registration or administrative approval. A second result would be that the 'joint control' exception

[ 493 ]

would be partly subsumed by the definitional exclusion." 18 W Res L Rev at 407-11. (Footnotes omitted.)

It must be admitted that if the present transaction involves a security interest, any limited partnership involves such an interest because of the very nature of such a transaction. This is the conclusion that was reached in Long, *Partnership, Limited Partnership, and Joint Venture Interests as Securities,* 37 Mo L Rev 581 (1972). After analysis, the writer lays down his definition of a security as follows:

> "Any contract, agreement, or other instrument by the investor invests money or money's worth in a common venture with the recipient, over which the investor has no managerial control over the venture as a result of his investment, and where the investment becomes a part of the risk capital of the venture, and where the investor expects some benefit to accrue to him as a result of his investment is a security." *Id.* at 611. (Emphasis deleted.)

He then further states as follows:

> "Limited partnership interests are always securities under this test. There is an investment of money or money's worth. The investors participate in the common venture of the partnership business, although limited partners are restricted to contributing capital and advising the general partners in a general, non-binding way. The investment becomes a part of the risk or venture capital used to operate the partnership business. Moreover, the limited partner expects a return on his investment from partnership profits." *Ibid.* (Footnotes omitted.)

Such a conclusion has also been arrived at by the 9th Circuit Court of Appeals in the case of *McGreghar Land Co. v. Meguiar,* 521 F2d 822 (9th Cir 1975), wherein it held that by the *Howey* test the purchase of a limited partnership interest was a transfer of a security under the federal act. From the statement of facts it appears to be an isolated transaction without any public offering.

It is our conclusion that until the legislature, by an amendment of the Act, indicates that it was not its intention to give the protection of the fraud provisions of the Act to purchasers in isolated transactions where there is no public sale or solicitation, the Act and the usual definitions of an investment contract require such protection.

Defendant also contends that the *Howey* definition does not fit the present situation because the partnership document provided that plaintiff was to work in the business and, therefore, the income to plaintiff, if any, would not be derived "solely" from the effort of others.

The *Howey* definition of an investment contract has been under criticism in this respect for some time. This criticism is voiced in Professor Long's previously cited article:

"* * * Much of this dissatisfaction centers around the last element. The Court failed to make clear in *Howey* what type of efforts it meant. As a result a split of authority developed. In the late 1960's, a few courts, ignoring the Court's admonition about the application of irrelevant formulae, interpreted the 'efforts' test literally. These courts determined that investor participation in the enterprise in any manner was sufficient to remove the investor's interest from the coverage of the *Howey* definition. That his participation had no effect upon his investment or the outcome of the enterprise was unimportant. It was only necessary that he be required to do some work, usually physical, to further the enterprise. * *' *.

"Some courts, however, determined that the efforts to which the Court referred were managerial efforts. Under this view, the crucial question is whether the investor has the right to participate in those management decisions that determine whether the venture will be successful. If the investor has the right to share in the making of such decisions, his interest is not a security; however, if he merely invests, leaving the control and

[ 495 ]

management to other active investors or paid managers, his interest is a security.

"* * * The interpretation of *Howey* that equates 'efforts' with 'managerial efforts' is ascendant, because no case since the 1970 case of *Koscat Interplanetary, Inc. v. King* [452 SW2d 531 (Tex Civ App)] has followed the literal interpretation of *Howey* that *any* efforts will suffice. * * *." 37 Mo L Rev at 601-02. (Emphasis in original; footnotes omitted.)

The following language was used by Judge Skopil at the trial level in *SEC v. Glenn W. Turner Enterprises, Inc.,* 348 F Supp 766 (D Or 1972), *aff'd.,* 474 F2d 476 (9th Cir), *cert. denied,* 414 US 821, 94 S Ct 117, 38 L Ed 2d 53 (1973):

"The most essential consistency in the cases which have considered the meaning of 'investment contract' is the emphasis on whether or not the investor has substantial power to affect the success of the enterprise. When his success requires professional or managerial skill on his part, and he has authority corresponding with his responsibility, his investment is not a security within the meaning of the securities acts. When he is relatively uninformed and unskilled and then turns over his money to others, essentially depending upon their representations and their honesty and skill in managing it, the transaction is an investment contract." 348 F Supp at 775.

It is doubtful that the *Howey* test ever intended that an interest sold would not be a security if the purchaser labored in the enterprise in a non-managerial capacity, because the Court there said: "Thus all the elements of a profit-seeking business venture are present here. The investors provide the capital and share in the earnings and profits; *the promoters manage, control and operate the enterprise." Securities and Exch. Com. v. Howey Co.,* 328 US at 300. (Emphasis added.) Subsequently, the Supreme Court has used language which is inconsistent with defendant's contention. In *United Housing Foundation, Inc. v. Forman,* 421 US 837, 852, 95 S Ct 2051, 44 L Ed 2d 621 (1975), it said: "The touchstone is the presence of

an investment in a common venture premised on a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others." The importance of control in the purchaser giving him the power to affect the success of the enterprise as a prerequisite to avoiding classification as a security is recognized by Professor Coffey in his previously cited article.[5]

It is our conclusion that the *Howey* test should be modified so that the requirements are (1) an investment of money (or money's worth), (2) in a common enterprise, (3) with the expectations of a profit, (4) to be made through the management and control of others. By setting forth this modification we do not mean to imply that no other modifications in the rule will be forthcoming in situations in which reason seems to so direct when the purpose of the statutory scheme is considered. Neither do we mean to indicate that this will be the only rule used in all circumstances. Because the partnership agreement put management entirely in the hands of defendant, we believe plaintiff's employment by the partnership in a non-management position does not keep the transaction from being an investment contract. *E.g., Polikoff v. Levy,* 55 Ill App 2d 229, 204 NE2d 807, *cert. denied,* 382 US 903, 86 S Ct 237, 15 L Ed 2d 156 (1965); *SEC v. Glenn W. Turner Enterprises, Inc.,* 474 F2d 476 (9th Cir), *cert. denied,* 414 US 821, 94 S Ct 117, 38 L Ed 2d 53 (1973). An investor who labors without having an opportunity to participate in management is just as helpless to govern what happens to his investment as is a purely passive investor.

It is our conclusion that the trial court was in error in sustaining the demurrer to plaintiff's complaint, and its judgment for defendant is reversed and the case is remanded for further proceedings.

[5] *Id.* at 397-98.

**O'CONNELL, J.,** dissenting.

I dissent. I do not believe that the legislature intended to incorporate all limited partnerships within the definition of "security" contained in ORS 59.015(13). The guiding principle in determining whether a particular transaction is of the type sought to be regulated under the Blue Sky Law should be whether it presents a danger requiring stricter rules of fraud then those afforded by the common law. As was noted by the Supreme Court in the first case requiring analysis of the word "security" under the Federal Securities laws:

"* * * However well these rules [of statutory construction] may serve at times to aid in deciphering legislative intent, they long have been subordinated to the doctrine that courts will construe the details of an act in conformity with its dominating general purpose, will read text in the light of context and will interpret the text so far as the meaning of the words fairly permits so as to carry out in particular cases the generally expressed legislative policy." *Securities & Exchange Com. v. Joiner Leasing Corp.,* 330 US 344, 350-51, 64 S Ct 129, 88 L Ed 88, 93 (1943).

More recently, the Supreme Court, in wrestling again with the definition of "security" within the Securities Acts, held:

"We reject at the outset any suggestion that the present transaction evidenced by the sale of shares called 'stock,' must be considered a security transaction simply because the statutory definition of a security includes the words 'any * * * stock.' * * *

"* * * Because securities transactions are economic in character Congress intended the application of these statutes to turn on the economic realities underlying a transaction, and not on the name appended thereto. Thus, in construing these Acts against the background of their purpose, we are guided by a traditional canon of statutory construction:

" '[A] thing may be within the letter of the statute and yet not within the statute, because not within its spirit, nor within the intentions of its makers.'

[ 498 ]

Church of the Holy Trinity v. United States, 143 US 457, 459, 26 L Ed 226, 12 S Ct 511 (1892)."

*United Housing Foundation, Inc. v. Forman,* 421 US 837, 848-49, 95 S Ct 2051, 44 L Ed2d 621, 630 (1975).

In holding that all limited partnerships, irrespective of their context, are "investment contracts" the majority ignores the spirit of the Oregon Securities Law.[1] It must be remembered that the statute was enacted to provide special remedies in the limited class of cases involving the sale of securities. It was so limited because of the peculiar evils attending the marketing of securities. The dangers of deceptive practices assocated with the sale of securities to the public generally which inspired the passage of Blue Sky Laws are not present in one-to-one transactions which form no part of a general scheme. As Professor Loss points out, "The problem, in short, is to distinguish between the public offering of securities parading as 'limited partnership interests' and 'an offering of a half interest in a hamburger stand.' "[2] If the antifraud section of the statute is regarded as intended for the protection of purchasers where there is a public offering then of course, it would not apply in cases such as we have before us where two persons are drawn together by a mutual interest in creating a new enterprise. Plaintiff's investment in the partnership was not as a result of an "indiscrimate offering to the public at large where the persons solicited are selected at random."[3] Because the policy of public protection

---

[1]The definitional section of the statute begins with the words, "As used in the Oregon Securities Law, unless the context otherwise requires * * *." This indicates a legislative recognition that to determine what a "security" is under the Act, a case-by-case analysis is needed. *Cf. McClure v. First National Bank,* 352 F Supp 454, 456-57 (N.D. Tex 1973), *aff'd.,* 497 F2d 490 (5th Cir 1974), *cert. denied,* 420 US 930 (1975).

[2]L. Loss, Securities Regulation 505 (2d ed 1961).

[3]Dahlquist, *Regulation and Civil Liability Under the California Corporate Securities Act,* 33 Calif L Rev 343, 360 (1945). Dahlquist argues that where the right of mutual selection exists in limited partnerships, such membership does not constitute a "security." Several California cases have adopted the mutual selection test in examining limited partnerships

underlying the Oregon Securities Law was not offended in this case, the interest should not be classified as a "security."

It is to be noted that ORS 59.015(13), in defining the term "security", specifically includes in the definition pension plan interests, preorganization subscriptions, collateral trust certificates, and voting trust certificates of participation in mineral leases. Each of these well established, readily identifiable interests was explicitly included within the definition of security. A limited partnership interest is likewise a well established and readily identifiable interest. It would seem, therefore, that if the legislature intended *all* limited partnership interests to be deemed "security" interests, such interests would have been explicitly included and not left to be part of a miscellaneous category of "investment contracts," as the majority opinion treats them.[4]

This case, as well as *Marshall v. Harris,* decided this day, present difficult questions arising out of the ambiguity in the meaning of the term "security" as used in ORS 59.015. The statutes should be amended to clarify the meaning of the term "security."

DENECKE, C. J. and HOWELL, J., join in this opinion.

as securities. *See Farnsworth v. Nevada-Cal Management, Ltd.,* 188 Cal App2d 382, 10 Cal Rptr 531 (1961); *Rivlin v. Levine,* 195 Cal App2d 13, 15 Cal Rptr 587 (1961); and *Solomont v. Polk Development Co.,* 245 Cal App2d 488, 54 Cal Rptr 22 (1966).

[4] In the interpretation of ORS 59.015(13) some significance may be attached to the fact that persons forming a limited partnership are required to file a certificate with the Corporation Commission disclosing detailed information on the nature of the business (ORS 69.180) in some respects similar to the registration requirement for the sale of securities.