Argued and submitted July 27, affirmed in part; reversed
in part; and remanded for resentencing December 30, 1981,
reconsideration denied February 25,
petition for review denied May 18, 1982 (293 Or 146)

## STATE OF OREGON,
*Respondent,*

*v.*

## SYDNEY H. JACOBS,
*Appellant.*

(No. 79-1371-C-1, CA 19500)

637 P2d 1377

Walter D. Nunley, Medford, argued the cause and filed the brief for appellant.

William F. Gary, Solicitor General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Karen Peterson, Certified Law Student, Salem.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

Defendant appeals his jury convictions for selling unregistered securities, conspiring to sell unregistered securities, committing securities fraud and conspiring to commit securities fraud.

The issues are: (1) whether the district attorney was barred from prosecuting defendant, because the Oregon Corporation Commissioner had obtained defendant's consent to an administrative cease and desist order by promising to discontinue his investigation of the matter; (2) whether there was sufficient evidence from which the jury could conclude that an offer to buy or sell securities originated in Oregon; (3) whether there was sufficient evidence from which the jury could conclude that the interests in land sold by defendant constituted "securities"; (4) whether the state was required to prove that defendant knew that the interests in land which he was selling were unregistered securities; and (5) whether there was sufficient evidence from which the jury could conclude that defendant knowingly made false representations of material fact in connection with the sale of securities.

The charges arose from the sale of interests in parcels of undeveloped agricultural land located in Jackson County. The scheme to develop and sell those interests apparently was put together by three individuals. Defendant is a California resident. He was a business acquaintance of Harold Marshall, a retired tax accountant. The office in Cupertino, California, in which defendant met with prospective investors was identified as the office of "H. Marshall." Marshall and his wife, Melba, moved to Oregon several years before the trial. Marshall showed at least two prospective investors the land in which they ultimately invested. At that time, Marshall stated that he was the executor of an estate which was selling the land. Later, he stated "he was running the show."

In April, 1978, defendant advertised in two California newspapers for prospective investors in land. With one exception, all the buyers responded to these advertisements. Several prospective investors met with defendant in the Cupertino office and were given brochures describing the land and explaining its investment potential. Defendant told the prospective investors they could purchase undivided interests

in land at a price of $2,100 or $2,200 an acre. Defendant represented to those investors that he would resell the land for between $3,000 and $5,000 an acre. Defendant also represented that resale would occur within a year, after the land had been rezoned and subdivided. The investors understood that defendant would be handling the bulk of the work on the subdivision plans. In connection with the purchase, each owner signed an "Equal Owner Acknowledgment Agreement," which gave defendant authority to seek buyers. Some investors believed it also meant that they were not permitted to seek purchasers on their own.

■ Defendant contends that the Oregon Corporation Commissioner breached an agreement to discontinue investigating the land sales at issue in return for defendant's promise not to contest an administrative cease and desist order. Defendant argues that the agreement not to contest the administrative order constituted a plea agreement which precluded the district attorney from instituting these proceedings, citing *Stone v. Cupp*, 39 Or App 473, 592 P2d 1044 (1979), and *Stewart v. Cupp*, 12 Or App 167, 506 P2d 503 (1973). The cases defendant cites are inapposite. In *Stone* and *Stewart*, a plea agreement had been negotiated between the defendant's counsel and the prosecuting attorney, and later the prosecutor breached the agreement. Here, any agreement that was made was made not by the prosecutor but by the Corporation Commissioner, who held no legal power to prosecute defendant or to bind the district attorney.[1]

The Corporation Commissioner has broad civil power to enforce the securities law. *See, e.g.,* ORS 59.245; ORS 59.255. However, the Commissioner does not have jurisdiction to initiate criminal prosecutions for securities violations. That power resides solely with the district attorney of the appropriate county. Or Const, Art VII (original), § 17; ORS 8.660 *et seq.* Because the Commissioner's enforcement power is wholly civil, the cease and desist order which was entered against defendant did not preclude the district

---

[1] The district attorney is the public prosecutor in each county, ORS 8.650, and conducts on behalf of the state all prosecutions for public offenses within his county (except as provided by ORS ch 484). ORS 8.660.

attorney from prosecuting him for violating the securities law.

■        Defendant next contends that there was no evidence any offers or acceptances in connection with the sale of securities were made in Oregon. Defendant was convicted of the sale of unregistered securities, ORS 59.055,[2] and securities fraud. ORS 59.135.[3] ORS 59.335(1) provides:

"ORS 59.055, 59.115 to 59.125, 59.135 and 59.145 and subsection (1) of 59.165 apply to persons who sell or offer to sell when:

"(a)  An offer to sell is made in this state; or

"(b)  An offer to buy is made and accepted in this state."

ORS 59.345(1), in turn, provides in part:

"For the purpose of ORS 59.335, an offer to sell or to buy is made in this state, *whether or not either party is then present in this state,* when the offer:

"(a)  *Originates* from this state; * * * ." (Emphasis added.)

Under these statutes, the Oregon Securities Law applies if there is sufficient evidence from which the trier of fact could conclude that the offers to sell the interests in land originated in Oregon. The state maintains that the offers made

---

[2] ORS 59.055 provides:

"It is unlawful for any person to offer or sell any security in this state, unless:

"(1)  The security is registered and the offer or sale is not in violation of any rule or order of the commissioner or any condition, limitation or restriction imposed by him upon such registration; or

"(2)  The security is exempt under ORS 59.025 or the sale is exempt under ORS 59.035."

[3] ORS 59.135 provides in part:

"It is unlawful for any person, directly or indirectly, in connection with the purchase or sale of any security or the conduct of a securities business or for any person who receives any consideration from another person primarily for advising the other person as to the value of securities or their purchase or sale, whether through the issuance of analyses or reports or otherwise:

"(1)  To employ any device, scheme or artifice to defraud;

"(2)  To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading;

"(3)  To engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person; * * * ."

to California investors actually originated in Oregon, because defendant acted as agent for Harold and Melba Marshall.

Although there is little direct evidence that the Marshalls controlled defendant's dealings with the investors, circumstantial evidence shows the Marshalls and defendant were engaged in a mutual agency. The Marshalls owned the property defendant sold to investors. The original owners had deeded the property to Marshall's wife. In turn, she conveyed title to the various investors. One investor testified that Harold Marshall showed them the land in Oregon and that Marshall admitted "he was running the show." Marshall also was quoted as admitting that because of tax problems defendant had purchased the land for him. There also was testimony that the office at which defendant met prospective investors had the name "H. Marshall" on it. The Marshalls are Oregon residents and transacted business from this state. Because defendant did not own the property, it was reasonable to infer that he was acting as an agent of the Marshalls. The jury could have found beyond a reasonable doubt that the offers to sell the interests in land originated in Oregon. *Jackson v. Virginia,* 443 US 307, 319, 99 S Ct 2781, 61 L Ed 2d 560 (1979); *State v. Harris,* 288 Or 703, 721, 609 P2d 798 (1980). Thus, defendant's motion to dismiss[4] on this ground was properly denied.

Defendant also contends that sale of fractional interests in undeveloped land does not constitute the sale of a "security." As defined in ORS 59.015(13)(a), a security is:

> "* * * a note, stock, treasury stock, bond, debenture, evidence of indebtedness, * * * investment contract * * * or, in general, any interest or instrument commonly known as a 'security' * * * ."

To protect the investing public from fraudulent and worthless securities transactions, *Sperry & Hutchinson Co. v. Hudson,* 190 Or 458, 467, 226 P2d 501 (1951), the Oregon Supreme

---

[4] Throughout the case defendant's counsel identified virtually all motions as "motions to dismiss," regardless of the grounds or the stage of the proceeding at which they were made. Defendant's motions in assignments of error nos. 3, 4, 5, 6 and 8 address the sufficiency of the evidence. They were treated below by the parties and the court as motions for judgment of acquittal, and we treat them as such.

Court has "expressly avoided hard and fast rules in determining what financial transactions constitute a security or an investment contract." *Foelker v. Kwake,* 279 Or 379, 385, 568 P2d 1369 (1977). In *S.E.C. v. W.J. Howey Co.,* 328 US 293, 66 S Ct 1100, 90 L Ed 1244 (1946), the United States Supreme Court defined "investment contract" as: "a contract, transaction or scheme whereby a person invests money in a common enterprise and is led to expect profits *solely* from the efforts of the promotor or a third party." (Emphasis added.) 328 US at 298-99. The Oregon Supreme Court modified the *Howey* test in *Pratt v. Kross,* 276 Or 483, 555 P2d 765 (1976). Rather than requiring that anticipated profits be derived solely from the efforts of others, the modified test requires that anticipated profits be derived through the *management and control* of others. 276 Or at 497; *see Black v. Corporation Division,* 54 Or App 432, 634 P2d 1383 (1981). This modification of the *Howey* test was necessary to support the conclusion that a limited partnership agreement was an investment contract even though the limited partner had some duties in connection with the business.[5]

The investors in this land sale scheme did not anticipate playing a significant role in dividing the land, recruiting other investors, rezoning or resubdividing the land or obtaining purchasers for the property's ultimate resale. All of them lived in California. Their only chance for participation was in the approval or disapproval of prices at resale. The investors stated at trial that they were wholly dependent upon others to achieve their ends.[6] When investors purchased their

---

[5] In this case, the court instructed the jury to apply the traditional *Howey* test. Defendant does not challenge the instruction. We note, however, that the instruction as given is more favorable to defendant than if the court had instructed on the *Howey* test as modified by *Pratt.*

[6] "Q. Who would be doing the subdividing?

"A. I was not aware of it and I didn't know how this was going to go about. I just trusted Mr. Jacobs that he knew what was going on, that he knew the business. .

"* * * * *

"Q. If the land was to be subdivided who would be doing the subdividing of the land?

"A. I don't remember making that decision, because I was just in the purchase of it * * * I assume between he and Marshall that they would probably do that.

undivided interests in the property, they simultaneously executed an "Equal Acknowledgment Agreement," which conferred general management power on defendant.[7] Considering these facts in light of the *Howey* test, or that test as modified by *Pratt,* we hold that the participatory undivided interests sold in this case constituted "investment contracts."

■■   Defendant also contends that the state failed to prove, as an element of the securities violations, that he knew that what he was selling was a "security" which had to be "registered." Defendant appears to argue that he did not know the fractional shares of property he was selling were "securities" which had to be "registered." This "ignorance of the law" argument is untenable. Good faith, and even advice of counsel, is not a defense in a securities case. *State v. Whiteaker et al,* 118 Or 656, 664, 247 P 1077 (1926); *see Marshall v. Harris,* 276 Or 447, 453, 555 P2d 756 (1976); *Moe v. Coe,* 124 Or 436, 439, 263 P 925 (1928). If selling securities with the advice of counsel is not a defense, it cannot be a defense that defendant failed to obtain professional advice. *Gonia v. E.I. Hagen Co.,* 251 Or 1, 7, 443 P2d 634 (1968); *see also Spears v. Lawrence Sec., Inc.,* 239 Or 583, 586-87, 399 P2d 348 (1965). To hold otherwise would make evasion of the statute easily accomplished and deprive it of much of its practical effect. *Marshall v. Harris, supra,* 276 Or at 453. *See also* ORS 161.115(4).

---

"* * * * *

"Q. From the time you bought it to the time the land would be sold did you have any function in all of this?

"A. No. Just notified what's happened and just pay on my interest taxes [sic].

"* * * * *

"Q. Did Mr. Jacobs tell you who would be managing the land?

"A. He said he would be handling all situations with the land. In fact, even when we came back from talking with Harold it was still Syd's contention that Syd was running the operation, that Harold was just his accountant."

[7] Exhibit 16 is typical of these agreements. It provides:

"The undersigned does herewith authorize Syd Jacobs to act in his behalf and in his best interest, without compensation for Syd Jacobs' services in such matters directly relating to the above described acreage * * * ."

■ Defendant was convicted of sale of unregistered securities and securities fraud under ORS 59.055 and ORS 59.135. Violation of these statutes is made criminal by ORS 59.991(1), which provides:

> "Any person who violates any provision of the Oregon Securities Law, except subsection (2) of ORS 59.315, shall, upon conviction, be fined not more than $10,000 or imprisoned not more than five years, or both."

Both parties acknowledge that, generally, a conviction under these statutes is only punishable as a violation.[8] ORS 161.105(2). The state however, contends, that it exercised its discretion to plead and prove a culpable mental state and thus elevated the offenses to unclassified felonies under ORS 161.105(3). Such an allegation in the indictment is sufficient to charge the offense as a felony. ORS 161.105(3); *see State v. Wolfe,* 288 Or 521, 605 P2d 1185 (1980).[9]

■■ The state alleged that defendant committed the charged offenses knowingly; the issue then is whether the state *proved* the element of knowledge. To support a felony conviction, the state was required to prove that defendant acted knowingly with respect to each element of the offense, which necessarily requires a mental state. ORS 161.095(2). Under ORS 161.085(8), "knowingly means that a person acts with an awareness that his conduct is of a nature so described or that a circumstance so described exists." The issue with respect to defendant's conviction under ORS 59.055 is whether defendant knew he was selling fractional interests in land. Viewing the evidence in the light most favorable to the state, there was sufficient evidence. from which the

---

[8] *State v. Pierre,* 30 Or App 81, 566 P2d 534 (1977), cited by defendant, is distinguishable. In *Pierre,* defendant was sentenced for a felony. She contended that, because a conviction under ORS 59.055 did not require proof of a culpable mental state under ORS 161.105(2), she could be sentenced only for a violation. We held that the state need not prove a culpable mental state in order to convict under ORS 59.055, but that absent such allegation and proof the conviction could only be punished as a violation.

[9] ORS 161.105(3) provides:

"Although an offense defined by a statute outside the Oregon Criminal Code requires no culpable mental state with respect to one or more of its material elements, the culpable commission of the offense may be alleged and proved, in which case criminal negligence constitutes sufficient culpability, and the classification of the offense and the authorized sentence shall be determined by ORS 161.505 to 161.605 and 161.615 to 161.655."

jury could have found beyond a reasonable doubt that he did. *See State v. Krummacher,* 269 Or 125, 142, 523 P2d 1009 (1974).

■ Defendant also was convicted of fraud in the sale of securities under ORS 59.135, which makes it unlawful to make "any untrue statement of a material fact or to omit to state a material fact necessary in order to make a statement made * * * not misleading." Defendant contends that there was insufficient evidence to prove that he knowingly made any untrue statements of material fact. Ample evidence existed from which the jury could find that defendant knowingly made false representations of material fact about the value of the land and the existence of encumbrances on that land and that defendant omitted a material fact about the capability of the Rogue Valley Escrow Company to handle investors' accounts.

The state concedes that the motion for judgment of acquittal on the conspiracy charges should have been allowed, because there was no evidence the criminal conspiracy between defendant and the Marshalls occurred in Jackson County. *State v. Roper,* 286 Or 621, 628, 595 P2d 1247 (1979). Accordingly, we vacate defendant's convictions for conspiracy to sell unregistered securities (Count I) and conspiracy to commit security fraud (Count II).

Affirmed in part; reversed in part; and remanded for resentencing.