STATE of Missouri, Respondent,

v.

John DUMKE, Appellant.

No. WD 49208.

Missouri Court of Appeals,
Western District.

April 4, 1995.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 30, 1995.

Application to Transfer Denied
July 25, 1995.

Thomas J. Stephens, IV, Grant City, for
appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen.,
Douglas M. Ommen, Asst. Atty. Gen., Jeffer-
son City, for respondent.

Before HANNA, P.J., and BRECKENRIDGE and SMART, JJ.

SMART, Judge.

John Dumke appeals from his conviction for selling unregistered securities, § 409.301, RSMo 1994[1], and for transacting business as a unregistered security agent, § 409.201. He was sentenced to consecutive terms of six years imprisonment and fined $100,000 for each offense. He presents five points on appeal, contending the trial court erred by: (1) giving an instruction in which the term "willfully" is allegedly defined erroneously; (2) excluding evidence as to securities registration exemptions filed in other jurisdictions and excluding evidence as to legal advice provided by his attorney; (3) admitting irrelevant, immaterial and prejudicial evidence; (4) refusing to grant a mistrial based upon prejudicial comments made by the prosecutor; and (5) refusing to grant a mistrial or, in the alternative, refusing to grant appellant's motion for judgment of acquittal because appellant was denied a fair trial and his constitutional right to due process.

The judgment is affirmed.

On January 31, 1990, Jewell and Ethel Maize attended a Living Trust Seminar in St. Joseph, Missouri. In addition to information concerning living trusts, information about investment opportunities was presented at the seminar. Dumke was a presenter at this seminar. Dumke was a partner in a financial planning company, Professional Protection Plans (PPP), doing business in Nebraska, Iowa, Missouri and Kansas.

The next day, February 1, 1990, Dumke called upon Mr. and Mrs. Maize. After a discussion about investments, Mr. and Mrs. Maize gave Dumke checks totalling $25,000 to invest in PPP. In return they were given a yellow paper receipt which was later replaced by a gray "corporate funding agreement" serving as a receipt. Additional amounts of money were given by Mr. and Mrs. Maize to Dumke on April 3, 1990 ($30,-000), May 21, 1990 ($15,000) and May 30, 1990 ($30,000). Thus, Mr. and Mrs. Maize invested a total of $100,000 in PPP. They were given a "corporate funding agreement" signed by Dumke reflecting their total investment.

In early 1990, Mary Hosmer, an enforcement attorney in the Securities Division of the Missouri Secretary of State's Office, received information from the State of Nebraska indicating that PPP might be selling securities in Missouri. Upon investigation, Ms. Hosmer determined that neither Dumke nor PPP were registered in Missouri. She sent a target letter, dated May 3, 1990, to PPP requesting information about the company's claimed exemption in light of its unregistered status. In reply PPP's attorney, Gary Hoffman, erroneously claimed an exemption under § 409.402(b)(9), which sets out numerous exemptions to the registration requirements. Dumke did not register as a securities agent with the State of Missouri, nor was PPP registered as a security.

In his first point, Dumke claims that the trial court erred in giving Instruction No. 5, containing a definition of the term "willfully" which reads:

> A "willful" act or omission may be described as an intentional act or omission to perform an act in that the person was aware of what he was doing or failing to do. Proof of evil motive, intent to violate the law, or knowledge that the law was being violated is not required.

Dumke contends that this definition was erroneous because: (1) it eradicates the difference between willful and non-willful violations; (2) it unjustifiably dispenses with **mens rea**; (3) it conflicts with the definition of the term used by the Supreme Court; and (4) it finds no support in legislative history.

Dumke was convicted for transacting business as an unregistered security agent, § 409.201(a), and for selling unregistered securities, § 409.301. Section 409.201(a) provides:

> It is unlawful for any person to transact business in this state as a broker-dealer unless he is registered as a broker-dealer under this act; it is unlawful for any person to transact business in this state as an

---

1. Statutory references are to RSMo 1994, unless otherwise indicated.

agent unless he is registered as an agent under this act.

Section 409.301 provides: "It is unlawful for any person to offer or sell any security in this state unless (1) it is registered under this act or (2) the security or transaction is exempted under section 409.402." The penalty for violating these statutes is established in § 409.410(a), which provides that, "[a]ny person who *willfully* violates any provision of this act ... shall upon conviction be fined not more than five hundred thousand dollars or imprisoned not more than ten years, or both." (Emphasis added).

The essence of Dumke's argument is that the state's interpretation of the word "willfully" is incompatible with its usage in other areas of criminal law. He contends that a defendant must have the **mens rea** before a violation of the statute can be found. Specifically, he points to § 562.016(1), which provides that, "a person is not guilty of an offense unless he acts with a culpable mental state, that is, unless he acts purposely or knowingly or recklessly or with criminal negligence...." Dumke contends that a mistake of law or fact and good-faith reliance upon advice of counsel should be valid defenses insofar as they negate the mental state required for conviction. Dumke's argument may be logically cogent in view of the frequent usage of the word "willful" in other contexts, but the argument is completely unsupported in the context of securities law.

There is no definition of the word "willfully" in Chapter 409, nor is such a definition found in other areas of the criminal code. We must turn elsewhere to obtain such a definition. Chapter 409 was adopted from the Uniform Securities Act. "[I]n construing uniform and model acts enacted by the General Assembly, we must assume it did so with the intention of adopting the accompanying interpretations placed thereon by the drafters of the model or uniform act." *John Deere Co. v. Jeff De Witt Auction Co.*, 690 S.W.2d 511, 514 (Mo.App.1985).

A definition of the word "willfully" can be gleaned from looking at the Official Comment to Chapter 409, the criminal provision of the Uniform Securities Act, which states: "On the meaning of 'willfully' see the com-

ment under § 204(a)(2)(B)." The section referred to is a civil enforcement section which authorizes a securities officer to revoke, suspend or withdraw a registration. The section refers to such authority being exercised when a securities seller has "willfully violated or willfully failed to comply" with any provision of the securities act.

The Official Comment notes:

Clause (B): As the federal courts and the SEC have construed the term "willfully" in § 15(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 780(b), all that is required is proof that the person acted intentionally in the sense that he was aware of what he was doing. **Proof of evil motive or intent to violate the law, or knowledge that the law was being violated, is not required.** The principal function of the word "willfully" is thus to serve as a legislative hint of self-restraint to the Administrator. (Emphasis added).

Although § 409.204(a)(2)(B) applies to administrative sanctions for violation of the act, it is apparent that the same standard is applicable to criminal prosecutions. *See State v. Russell*, 119 N.J.Super. 344, 291 A.2d 583, 586 (1972).

There is no Missouri case law directly on point. However, when construing uniform acts, it must be remembered that the fundamental purpose of a uniform law is "to eliminate uncertainty and provide plain and certain the controlling rules of law." *State ex rel. Tri–City Constr. Co. v. Marsh*, 668 S.W.2d 148, 151 (Mo.App.1984). It is fitting, therefore, to turn to our sister jurisdictions and examine their solutions to the problem.

The primary purpose of the securities laws is to protect those who purchase securities. *Garbo v. Hilleary Franchise Sys., Inc.*, 479 S.W.2d 491, 499 (Mo.App.1972); *See also Dunn v. Bemor Petroleum, Inc.*, 680 S.W.2d 304, 306 (Mo.App.1984). This purpose is reflected in cases from other jurisdictions. *See, e.g., State v. Kreminski*, 178 Conn. 145, 422 A.2d 294 (1979); *People v. Mitchell*, 175 Mich.App. 83, 437 N.W.2d 304 (1989); *State v. Jacobs*, 55 Or.App. 406, 637 P.2d 1377 (1981); *State v. Nagel*, 279 N.W.2d 911 (S.D. 1979). A definition of "willful" requiring

proof of an evil motive, or of awareness that he was violating the law, would make enforcement difficult and would hinder this purpose. The court in *Nagel* pointed out that, "[t]he statute is remedial in nature, and was passed to protect the inexperienced, confiding, and credulous investor, and save him from his own foolish cupidity." *State v. Nagel,* 279 N.W.2d at 915 (quoting *State v. Martin,* 85 S.D. 587, 594, 187 N.W.2d 576, 580 (1971)). A construction of the statute which is sympathetic to the investor is urged in order for its purpose to be accomplished. *Id.*

■■■■ The overwhelming weight of authority uses the word "willful" to describe nothing more than an act done intentionally. *See, e.g., United States v. Schwartz,* 464 F.2d 499 (2nd Cir.1972) *cert. den.,* 409 U.S. 1009, 93 S.Ct. 443, 34 L.Ed.2d 302 (1972); *Buffo v. State,* 415 So.2d 1158 (Ala.1982); *People v. Feno,* 154 Cal.App.3d 719, 201 Cal.Rptr. 513 (1984); *People v. Morrow,* 682 P.2d 1201 (Colo.App.1983); *State v. Hodge,* 204 Kan. 98, 460 P.2d 596 (1969); *State v. Fries,* 214 Neb. 874, 337 N.W.2d 398 (1983). We find this authority persuasive and hold that "willful," as specifically applied to Chapter 409, means only that the act in question is intentional. To sustain a conviction under the statute, it is not necessary to find that the accused realized his conduct was in violation of registration requirements.

Supporting this construction of the statute is the fact that § 409.410 also prescribes punishment for any person "who willfully violates Section 409.404 [dealing with false statements], *knowing the statement made to be false or misleading in any material respect. . . .*" (Emphasis added). If the word "willful" necessarily includes an intention to violate the law, then the language emphasized above is completely superfluous. No one could be guilty of "willfully" violating § 409.404 unless he or she also knows that the statement was false or misleading in some material respect, if the word "willful" necessarily includes knowledge of violating the law. Consequently, it appears that the legislature did not intend the word "willful" to mean anything more than "intentional."

Dumke's arguments to the contrary are unpersuasive. He cites *United States v. United States Gypsum Co.,* 438 U.S. 422, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978), *Staples v. United States,* —— U.S. ——, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994) and *Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952), for the proposition that such an interpretation of "willful" unjustifiably dispenses with **mens rea**. None of these cases deal with securities law and the peculiarities contained therein.

In *Morissette,* the defendant was convicted of converting government bomb casings. Drawing on analogies to common law, the court found that proof of criminal intent was required for conviction. As is pointed out in *Nagel,* securities violations are based upon public welfare offenses and do not spring from common law, leaving the legislature the power to exclude intent as an element of the offense. *State v. Nagel,* 279 N.W.2d at 915. The *Gypsum* case concerned criminal violations of the Sherman Act. The court in *Nagel* distinguished *Gypsum,* pointing out that *Gypsum* involved a broad class of business conduct whereas, "there is nothing vague or elusive about the statutes that prohibit the offer and sale of unregistered security, and the acting as a securities agent without having registered as such an agent." *State v. Nagel,* 279 N.W.2d at 915–16.

*Staples* is also inapposite. *Staples* involved a conviction under the National Firearms Act for possession of an unregistered firearm. Emphasizing that its holding is narrow and adopting no new definitive rule of construction, the Supreme Court held that a mens rea requirement applied to the Firearms Act. *Staples v. United States,* —— U.S. at ——, 114 S.Ct. at 1804. The court stated that its holding hinged upon the view, "that if Congress had intended to make outlaws of gun owners who were wholly ignorant of the offending characteristics of their weapons, and to subject them to lengthy prison terms, it would have spoken more clearly to that effect." *Id.* In contrast to unsophisticated members of the public who might own a prohibited gun, the seller of public securities operates in a sophisticated field involving complex business and legal matters, and a

regulated environment. *State v. Russell*, 291 A.2d at 587. Dumke himself, for instance, was no "bumpkin who just got off the hay wagon." He presented himself as a sophisticated financial analyst and financial planner. He did business in various states. He operated in an environment in which regulation was a fact of life. He accepted large sums of money from his investors.

■ Dumke also relies upon *Ratzlaf v. United States*, — U.S. —, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994) and *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985). Both cases define "willful" differently from the instruction in the case at bar, requiring that a defendant's knowledge of his illegal conduct must be proved. Neither case, however, is a securities case. "Willful" is a word of many meanings with interpretation dependent upon context. The court in *Ratzlaf* recognizes the changing nature of the word. *Ratzlaf v. United States*, — U.S. at —, 114 S.Ct. at 659. In the instant case its meaning is derived from common usage in similar securities cases. Knowledge that the law was being violated is not required. The state is required to prove only that Dumke acted intentionally in the sense that he was cognizant of what he was doing. Because scienter is not an element of the crime, good faith reliance upon advise of counsel is no defense. *State v. Shafer*, 102 N.M. 629, 698 P.2d 902, 906 (1985).

Dumke relies upon *Hentzner v. State*, 613 P.2d 821 (Alaska 1980), to provide support for his argument that there is an additional intent requirement. In *Hentzner*, the court declined to reach the conclusion that the Securities Act was a public welfare statute and found that a showing of criminal intent was necessary for conviction. *Hentzner v. State*, 613 P.2d at 826–27. The case, in our view, is an aberration; the overwhelming weight of existing case law reaches an opposite result. As one commentator points out, if the logic of *Hentzner* is followed, then the acknowledged purpose of the Securities Act, protection of the public, is problematic. *See,* Long, Blue Sky Law § 8.02 (Clark Boardman 1993).

Missouri law does not bar such a result. Dumke argues that it does, pointing to § 562.016, which states in part as follows:

Except as provided in Section 562.026, a person is not guilty of an offense unless he acts with a culpable mental state, that is, unless he acts purposely or knowingly or recklessly or with criminal negligence, as the statute defining the offense may require with respect to the conduct, the result thereof or the attendant circumstances which constitute the material elements of the crime.

Section 562.026 provides that a culpable mental state is not required if the offense is an infraction and no culpable mental state is prescribed by the statute defining the offense or if the statute defining the offense clearly indicates a purpose to dispense with the requirement of a culpable mental state as to a specific element of the offense. Section 562.031 provides in part that a person is not relieved of criminal liability for conduct undertaken under a mistaken belief of fact or law unless such mistake negates the existence of the mental state required by the offense.

The statutory scheme under Chapter 562 sets the ground rules for culpable mental state when one is not specified in a statute defining the offense. However, the statutory scheme in Chapter 562 defers to the specific statute which defines the offense. Consequently, Chapter 562 is unavailing as to Defendant Dumke because § 409.410(a) provides for punishment upon *willful* violation of provisions of the securities law. "Willful," as we have already noted, means different things in different contexts. *See State v. Sinner*, 779 S.W.2d 690, 692–93 (Mo.App. 1989). In the context of the selling of unregistered securities, however, it simply means an act which is intentional with regard to the conduct. Thus, Dumke had a "culpable mental state" as defined by § 562.016 in that the jury found that he acted knowingly with respect to his conduct. The definition of "willful" in the instruction used in this case describes an intentional act, "in that the person was aware of what he was doing or failing to do." This definition is similar to that of "knowingly" in § 562.016, which provides

that a person acts knowingly "when he is aware of the nature of his conduct."

■ We also note, although Dumke has not raised a constitutional argument, that generally there is no constitutional defect in the legislature's declaration of conduct as criminal irrespective of the intent or knowledge of the actor. *State v. Beishir*, 646 S.W.2d 74, 76 (Mo. banc 1983); 21 Am.Jur.2d *Criminal Law* § 138 (1981). Certainly, the legislature has substantial reason to declare the selling of unregistered securities to be a criminal act if done voluntarily, regardless of a mistake of law. People who sell investments know that they are dealing in a highly regulated field, and that close attention must be paid to all legal requirements.

We recognize that our decision here is of concern because such a limited construction of the word "willful" arguably could result in the prosecution and conviction of a person with an entirely innocent frame of mind, believing that his actions were in full compliance with the law. The many courts and commentators which have looked at this, however, are convinced that such a construction is the price of preserving the state's ability to enforce the registration provisions in any meaningful way. Our analysis of the law leads us ineluctably to the conclusion that the prosecution need not show that the accused seller was aware that he was acting in violation of the law in selling unregistered securities. It is as though a culpable mind (at least a reckless state of mind about the law) is conclusively presumed and may not be rebutted by the accused. "But, when an act forbidden by law is intentionally done, the intent to do the act is the criminal intent, which imparts to it the character of the offense; and no one who violates a law which he is conclusively presumed to know can be heard to say he had no criminal intent in doing it." *State v. Silva*, 130 Mo. 440, 464, 32 S.W. 1007, 1014 (1895).

Point I is denied.

In Point II, Dumke contends that the trial court erred in excluding certain relevant and material evidence. Dumke sought to introduce evidence concerning a securities exemption he had filed with the State of Nebraska and a regulation D limited offering exemption filed with the Securities and Exchange Commission. In addition he sought to testify as to his understanding of advice given him relating to securities regulation procedures in Iowa, Nebraska, and with the Securities and Exchange Commission.

■ It is axiomatic that a trial court enjoys broad discretion in ruling as to the relevancy of evidence and that its decision will be reversed on appeal only upon a finding that it has clearly abused its discretion. *State v. Davis*, 867 S.W.2d 539, 545 (Mo.App. 1993). The test for relevancy is whether the proffered evidence would logically prove or disprove a fact in issue. *Id.* The evidence Dumke sought to have admitted fails the test for relevancy and thus the trial court did not abuse its discretion.

■ Evidence of Dumke's registration activities in other jurisdictions is irrelevant to the issue of registration in Missouri. His understanding as to advice given him by counsel is also irrelevant, in that a good faith reliance on advice of counsel is not a defense to the charge of selling unregistered securities. *State v. Shafer*, 698 P.2d at 906. Point II is denied.

In Point III, Dumke contends that the trial court erred in admitting evidence that Mr. and Mrs. Maize paid $100,000 for the unregistered securities in question and that Dumke's companies extended personal loans to him. Dumke contends that such evidence was prejudicial because it was not necessary to prove any element of the offenses charged and provoked animosity on the part of the jury because it alleged other business improprieties. He cites *State v. Mitnick*, 339 Mo. 127, 96 S.W.2d 43 (1936) in support of his argument. In *Mitnick*, the defendant was convicted of selling securities without having registered as dealer. The evidence presented at trial included the consideration paid to the defendant by the buyer. This evidence, however, was not at issue. The case was reversed due to the insufficiency of the information and in dicta the court observed that evidence as to the age of the victims and that the stock had not been delivered was immaterial and should not have been introduced.

*State v. Mitnick,* 96 S.W.2d at 46. The price paid was not challenged.

■ In the instant case the price paid for the stock was shown on checks admitted and on the corporate funding agreement. These documents are relevant to prove that a sale occurred by showing that consideration was given for the securities. Also, it was pertinent to show that the amounts of the transactions were not trivial. Evidence of the amount paid for securities has been admitted unchallenged in other jurisdictions. *See Kahn v. State,* 493 N.E.2d 790 (Ind.App. 1986); *State v. Jones,* 235 Neb. 1, 453 N.W.2d 447 (1990); *State v. Nagel,* 279 N.W.2d 911 (S.D.1979). The amount invested was a fundamental part of the transaction, and it would seem somewhat unusual to keep that information out of the evidence. We discern no abuse of discretion in the admission of the evidence of the price of the securities. *See United States v. Abrams,* 357 F.2d 539, 546 (2d Cir.1966) *cert. den.,* 384 U.S. 1001, 86 S.Ct. 1922, 16 L.Ed.2d 1014 (1966). Point III is denied.

■ In Point IV, Dumke claims that the trial court erred in denying his request for a mistrial after certain comments by the prosecutor. The first of these alleged errors occurred during the prosecutor's cross-examination of Dumke. In trying to determine what knowledge Dumke possessed about the companies in question, the prosecutor mentioned that PPP had gone out of business. The defense objected and moved for a mistrial. The objection was sustained and the motion for mistrial denied. The jury was instructed to disregard the question. Later, upon further cross-examination, the prosecutor asked Dumke whether he "took" money from Mr. and Mrs. Maize. Again the defense objected and moved for a mistrial. The motion for mistrial was denied, the question stricken, and the prosecutor was instructed not to use the term in question.

The declaration of a mistrial is a drastic measure. *State v. Young,* 701 S.W.2d 429, 435 (Mo. banc 1985), *cert. den.,* 476 U.S. 1109, 106 S.Ct. 1959, 90 L.Ed.2d 367 (1986). The trial court's power to employ such a remedy should be utilized only in extraordinary situations. *Id.* The trial court is in the best position to determine the effect of the challenged remark and its determination will not be disturbed absent a clear abuse of discretion. *State v. Brasher,* 867 S.W.2d 565, 569 (Mo.App.1993). In the instant case the trial court took appropriate measures. It did not abuse its discretion by failing to declare a mistrial in either of the challenged instances.

■ Dumke also alleges that a mistrial should have been declared because of remarks the prosecutor made during closing arguments asking the jury, "what you would accept if you were the victim?" This remark was not objected to by the defense at the time it was made. The defense later objected for the record outside the presence of the jury, and moved for a mistrial. The trial court refused to declare a mistrial.

Only in rare instances will relief be granted upon review of closing arguments for plain error. *State v. Wood,* 719 S.W.2d 756, 759 (Mo. banc 1986). The burden lies upon appellant to demonstrate how his right to due process and a fair trial was prejudiced by such comment. *State v. Gilreath,* 643 S.W.2d 274 (Mo.App.1982). We conclude that there was no manifest injustice to Dumke as a result of the remarks in question. Point IV is denied.

In his final point, Dumke argues that the trial court erred in failing to grant a mistrial, or in overruling his motion for judgment of acquittal, because of the cumulative effect of the trial court's errors. He claims that these errors in the aggregate denied him due process and a fair trial. Multiple and egregious cumulative errors have formed the basis for reversal. *State v. Whitman,* 788 S.W.2d 328, 336 (Mo.App.1990). The facts in this case do not support such reversal. Dumke received a fair trial. The trial court did not err in failing to grant a mistrial or in denying Dumke's motion for judgment of acquittal. Point V is denied.

The judgment is affirmed.

All concur.