RING BROS. CO., Plaintiff-Appellee,

v.

MARTIN BROS. CONTAINER & TIM-
BER PRODUCTS CORP., Defendant-
Appellant.

No. 23855.

United States Court of Appeals,
Ninth Circuit.

Feb. 11, 1971.

Edward M. Murphy (argued), of Stults, Jayne, Murphy & Anderson, Roseburg, Or., for defendant-appellant.

P. J. Washburn (argued), of Horn, Slocum & Washburn, Roseburg, Or., Peterson, Chaivoe.

Londer, Londer & Kowitt, Portland, Or., for plaintiff-appellee.

Before KOELSCH, CARTER and WRIGHT, Circuit Judges.

JAMES M. CARTER, Circuit Judge.

This appeal arises out of a diversity action in which the appellee was awarded damages resulting from the breach of a logging contract. The principal issues presented on appeal are:

(1) Whether the district court erred in finding a breach of contract in view of the facts and, particularly, the parties' prior dealings; and, (2) whether the court awarded the appellee excessive damages in view of the contract's ten-day termination clause. We affirm.

Appellant is an Ohio corporation that operates a sawmill and plywood plant in Oregon. Appellee is an Oregon partnership that is a logging contractor in Oregon. On May 16, 1966, the parties entered into a written contract in which appellee agreed to log approximately ten million feet of appellant's timber. Appellee was to begin work immediately and would be paid on a per thousand foot basis. The contract was to terminate on December 31, 1967, unless terminated sooner by ten days written notice by either party.

The appellee began the logging operations immediately after the contract was signed, and continued working until November of 1966, when appellant orally requested that operations be halted temporarily. Although appellee made persistent inquiries, the appellant did not authorize a resumption of the logging operations until July of 1967. During this seven month shutdown, appellee was ready, willing and able to perform under the contract, and left his equipment at the job site. A second shutdown occurred in November of 1967, when appellant again orally requested that appellee halt its logging efforts. Appellant did not, at any time, give appellee written notice of termination.

The district court held that appellant's actions in halting the logging operations on two separate occasions had rendered performance of the contract impossible and, therefore, constituted a breach thereof. The court awarded the appellee $31,037.00 for damages from the breach, plus $5,000 for attorneys' fees.

### 1. *Breach of Contract*

Appellant asserts on appeal that the shutdowns did not constitute a breach of the contract for three reasons: (1) The parties, by a course of dealings over several years, had recognized the propriety of a winter shutdown; (2) the appellee acquiesced in the shutdowns by continuing to perform on the contract without mention of or reservation of any claim for breach of contract; and (3) appellant's oral request to shutdown logging operations in November of 1967 constituted a termination of the contract under the ten-day termination provision. We will consider these claims *seriatim*.

First, the parties had dealt with each other prior to the present contract. In the past, there had been "winter shutdowns" as a result of snow, lack of rocked roads, and excessive log inventories at the sawmill. Nevertheless, the appellee argued successfully in the district court that the present contract, unlike prior agreements, *did* contemplate winter work. In addition, the court found that the appellant had agreed to rock the logging roads so that they would be passable during the winter months, but had failed to do so. The record fully supports these findings.

Second, the district court rejected appellant's contention that appellee had waived its claims for breach because

it failed to object to the shutdowns and continued to perform on the contract. The court found that "[appellee] was under economic coercion in that he feared losing present and future contracts granted by [appellant] if he objected to the closedowns". Accordingly, the court concluded that the doctrine of waiver was not available as a defense to this action.

■ Appellee could not have treated the shutdowns as anticipatory breaches because appellant had not repudiated the contract "positively, unconditionally, unequivocally, distinctly and absolutely." Swick v. Mueller, 193 Or. 668, 676, 238 P.2d 717, 720 (1952). Furthermore, under Oregon law, the fact that a party does not object to an early breach, by declaring the contract terminated, does not prevent him from asserting a subsequent breach. Coquille Mill & Tug Co. v. Robert Dollar Co., 132 Or. 453, 285 P. 244 (1930). After the first shutdown (November 1966) sufficient time remained for appellee to substantially perform the contract if not inhibited by further delay. Under the circumstances, appellee might have reasonably concluded that declaring a breach at that time was unnecessary and premature. Thus, the district court's determinations on this issue are both legally sound and supported by the record.

■■ Finally, appellant admits that written notice of termination was never given, but contends that its oral shutdown request in November of 1967 was sufficient to terminate the contract. Assuming that oral notice might be sufficient in certain circumstances, it seems only reasonable to require that such notice be clear and unequivocal in expressing the party's intention to terminate the contract. See, e. g., Oregon Portland Cement Co. v. E. I. DuPont De Nemours & Co., (D.Or.1953) 118 F. Supp. 603. The district court found that appellee did not receive unequivocal oral notice that the contract was terminated. The record supports the court's findings.

### 2. Award of Damages

Appellant contends that if this court should uphold the district court's decision that the contract was breached, the appellee is entitled to recover only nominal damages because the period for measuring lost profits should have been limited to the ten-day notice of termination period. In support of this position, appellant relies heavily upon Chevrolet Motor Co. v. McCullough Motor Co., (9 Cir. 1925) 6 F.2d 212. The case was an appeal from the district court of Montana and although not stated to rest on diversity jurisdiction, this was obviously the fact. In McCullough, the plaintiff sought recovery of lost profits resulting from the defendant's breach of an exclusive sales agency contract. The contract provided that either party could terminate the arrangement by five days written notice. Before any notice of termination was given, however, the defendant breached the contract by entering into a new and similar contract with another company to sell automobiles in the same territory covered by the plaintiff's contract. The court held that the defendant's conduct was an obvious repudiation of the contract, but limited plaintiff's recovery to nominal damages because of the five day termination provision.

We think the McCullough decision is distinguishable from the instant case. In McCullough the defendant's conduct was an open and obvious repudiation of the contract. The plaintiff could not have harbored any reasonable doubts regarding the defendant's intention not to continue performance under the contract. In this respect, the court viewed the open and notorious repudiation as being equivalent to actual notice of termination. Id. 6 F.2d at 214. In the instant case, however, there was no open and obvious repudiation of the contract.

The district court found in the present case that the breach was the cumulative result of two separate work stoppages during the contract period that rendered appellee's performance impossible. Appellant had the right to terminate the contract on ten days written

notice, but elected not to exercise that right. Instead, appellant allowed the appellee to continue to commit its equipment and other resources to the project on the expectation that it would be allowed to complete performance on the contract. Unlike *McCullough*, appellant's conduct was not an open and obvious repudiation that could be deemed the equivalent of notice of termination which would have alerted the appellee to search for other logging jobs. As a result, the appellee maintained its readiness and ability to perform for the appellant during the entire contract period.

 On these facts, we agree with the district court that the proper measure of damages is the proximate, direct, and reasonably ascertainable loss of profits that resulted from the breach. We cannot find that the district court's determination of the amount of damages was clearly erroneous.

The judgment of the district court is affirmed.