43 F.3d 1478
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
William L. BERRY; Robert R. Webb, Jr., Plaintiffs-Appellants,
v.
CARNACO TRANSPORT, INC., a foreign corporation, and
Transcorp Leasing, Inc., a foreign corporation,
Defendants-Appellees.
William L. BERRY; Robert R. Webb, Jr., Plaintiffs-Appellants,
v.
CARNACO TRANSPORT, INC., a foreign corporation, and
Transcorp Leasing, Inc., a foreign corporation,
Defendants-Appellees.
 Nos. 92-36844, 93-35301.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 3, 1994.
Decided Dec. 13, 1994.
 
 Appeal from the United States District Court, for the District of Oregon, D.C. Nos. CV 90-540-JU, CV 90-00540-JU.
 Helen J. Frye, District Judge, Presiding.
 D.Or.
 AFFIRMED AND REMANDED.
 Before: ALARCON, NORRIS, and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 The appellants, truckers William L. Berry and Robert R. Webb, Jr., who were terminated by Carnaco Transport, Inc. ("Carnaco") and thereafter required to relinquish possession of the trucks they leased from Transcorp Leasing Corporation, appeal the district court's dismissal under Federal Rule of Civil Procedure 12(b)(6) of certain of their claims and grant of summary judgment of the remaining claims in favor of the appellees in this diversity case, No. 92-36844.
 
 
 3
 In their first amended complaint, Berry and Carnaco alleged nine claims: (1) breach of contract against Transcorp; (2) breach of contract against Carnaco; (3) conversion against Carnaco and Transcorp; (4) unjust enrichment against Carnaco and Transcorp; (5) violations of statutory rights under the Oregon Uniform Commercial Code, ORS 79.5010 to 79.5060; (6) wrongful discharge against Carnaco; (7) breach of the covenant of good faith and fair dealing against Carnaco and Transcorp; (8) violation of the Oregon securities laws, ORS 59.010 et seq., and (9) conspiracy against Carnaco and Transcorp. Carnaco and Transcorp moved to dismiss claims six through nine for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). The magistrate judge recommended dismissal, and the district court adopted the magistrate judge's findings and recommendations.
 
 
 4
 Transcorp moved for summary judgment on Berry and Webb's remaining claims, claims one through five. Carnaco joined the motion. Berry and Webb also moved for summary judgment. The magistrate judge recommended that summary judgment be granted in favor of Transcorp and Carnaco, with the exception of Webb's claim (claim five) under the Oregon UCC that Transcorp failed to provide Webb with proper notice under Idaho Code Sec. 28-9-504(3) (ORS 79.5040(3)) of the disposition of the tractor Webb had leased.[1] The magistrate judge recommended that Webb be granted summary judgment against Transcorp on that claim, finding that Transcorp had failed to give notice of the sale. The district court adopted the findings and recommendations of the magistrate judge.
 
 
 5
 After these proceedings, the only matter left for trial was Webb's claim under the Oregon UCC that his tractor had not been sold, as required, in a commercially reasonable manner. Idaho Code Sec. 28-9-507(2); ORS 79.5070(2). Transcorp moved for summary judgment on that issue. Webb failed to respond to the motion. The magistrate judge recommended that the motion be granted. The district court adopted the recommendation.
 
 
 6
 A judgment was entered on October 9, 1992, dismissing the action. Berry and Webb appeal from that judgment.[2]
 
 
 7
 The main issue on which most of the claims depend is whether p 2 of the Carnaco Contract, containing the termination provisions, must be followed to the letter.[3]
 
 
 8
 In Oregon, if there is an agreement that a termination be in writing, that fact does not preclude a termination by oral notice. See Oregon Portland Cement Co. v. E.I. Du Pont de Nemours & Co., 118 F.Supp. 603, 607 (D.Or.1953) (termination of contract); see also Bailey v. Universal Underwriters Ins. Co., 258 Or 201, 216 (1970) (where there was actual notice, the fact that the notice did not comply with the contract is "wholly immaterial"); accord Terminal Transfer, Inc. v. Truck Ins. Exchange, 821 F.Supp. 1398, 1399 (D.Or.1993); Lusch v. Aetna Cas. & Surety Co., 272 Or. 593, 599 (1975); Halsey v. Firemans' Fund Ins. Co., 68 Or.App. 349, 352-53, rev. denied, 297 Or. 601 (1984). The idea these cases espouse is that where there is actual notice, courts will not be hypertechnical in their interpretation of notice provisions.
 
 
 9
 Thus, there are three acceptable notices for the terminations at issue here: (1) oral notice of termination for cause, followed by written confirmation; (2) oral notice of termination in place of written notice of termination, and (3) written termination. Berry and Webb were provided with both (2) and (3). The fact that written notices, which specified no reasons for termination, were sent to the appellants shortly after they received oral notification demonstrates that the appellees intended to terminate at will.[4] There is only one proviso:
 
 
 10
 [W]hen a contract contains a provision that it may only be terminated by a notice in writing, the notice of termination, if oral, must be unequivocal and must be proved by clear and convincing evidence.
 
 
 11
 Oregon Portland Cement, 118 F.Supp. at 607; see also Ring Bros. Co. v. Martin Bros. Container & Timber Products Corp., 438 F.2d 420, 422 (9th Cir.1971) (Oregon law). There is no genuine issue of material fact regarding the oral terminations of Webb and Berry: both testified at deposition that they clearly understood they were terminated when they received oral notification, just as if they had been given written notification.
 
 
 12
 The appellants' eighth claim for relief alleged that the Carnaco driver contracts and Transcorp finance contracts were investment contracts, and that Carnaco and Transcorp had violated the Oregon Securities Act. The Oregon courts modify the test set out in Securities Exchange Comm'n v. W.J. Howey Co., 328 U.S. 293, 299 (1946) to define an investment security. Pratt v. Kross, 276 Or. 483, 497 (1976) (en banc).[5] Oregon requires: (1) an investment of money (2) in a common enterprise (3) with the expectation of profit (4) to be made through the management and control of others. Id. The district court did not err in adopting the finding of the magistrate judge that there were no investment contracts. The provisions of the contracts make clear that the appellants were not under the management and control of others.[6]
 
 
 13
 The appeal numbered 93-35301 relates only to attorneys' fees. An amended judgment filed March 18, 1993, awarded $20,000 in attorneys' fees and $1,006.50 in costs to Carnaco and $18,047.00 in attorneys' fees and $203.00 in costs to Transcorp Leasing Co., Inc. See Civil No. 90-540-JU, docket no. 195 (filed March 26, 1993). Since we affirm the district court on the merits, we also affirm the award of attorneys' fees and costs to Carnaco and Transcorp.
 
 
 14
 We decline to award fees for a frivolous appeal pursuant to Federal Rule of Appellate Procedure 38. Carnaco and Transcorp have given notice that they will seek contractual attorneys' fees on appeal. We allow those fees and remand to the district court for a determination of the proper amount.
 
 
 15
 AFFIRMED. REMANDED for a determination of the amount of attorneys' fees on appeal.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Idaho Code Sec. 28-9-504(3) and ORS 79.5040(3) are practically identical statutes that provide in relevant part that a secured party after default may dispose of collateral provided that "reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor[.]"
 
 
 [2]
 Webb does not appeal the issue regarding the commercial reasonableness of the sale of the tractor he leased
 
 
 [3]
 Paragraph 2 of the Carnaco Contract states:
 TERM. The term of this Agreement shall commence on the 1 day of January, 1988, and shall continue in effect until this Agreement is terminated as set forth herein. Either party may terminate this Agreement, with or without cause, at any time after the effective date hereof by mailing to the other party by registered or certified mail, postage prepaid, or delivering to the other party at the address listed in Paragraph 13 below, a written notice of termination of this Agreement; termination of the Agreement shall be effective on the date of receipt of said written notice, or at such later date as may be specified in said written notice. Additionally, Carnaco may terminate this Agreement immediately by oral notice followed by written confirmation thereof sent to Contractor by registered or certified mail, postage prepaid, in the event Contractor breaches this Agreement or violates any law or regulation governing operations performed under this Agreement.
 
 
 [4]
 Both Carnaco's written notice of termination and Transcorp's notice of default followed immediately after the oral terminations: Berry received oral notice on May 12, 1988; Carnaco's written notice was dated May 12, 1988 and received May 20, 1988; Transport's notice of default is dated May 12, 1988. Webb's oral notice was on April 6, 1989; Carnaco mailed its notice on April 7 (although Webb says he "doesn't remember" receiving it); and Transport's notice of default is dated April 7, 1989. These dates are consistent with an intention to terminate under the at-will clause
 
 
 [5]
 For purposes of the federal Securities Act, an investment contract "means a contract, transaction, or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party...." Securities Exchange Comm'n v. W.J. Howey Co., 328 U.S. 293, 299 (1946)
 
 
 [6]
 Paragraph 5 of the Carnaco Operating Agreements provides:
 "The relationship of Contractor to Carnaco shall at all times be that of independent contractors.... Contractor shall be free, in its sole discretion, to determine the means and methods of the performance of all transportation services undertaken by it hereunder[.]"